WARNER INSURANCE COMPANY *vs.* COMMISSIONER OF
INSURANCE & another.[1]

Suffolk. September 14, 1989. - January 9, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Superior Court*, Jurisdiction. *Administrative Law*, Agency's authority, Primary jurisdiction. *Commissioner of Insurance. Insurance*, Commissioner of Insurance. *Contract*, Construction of contract.

In an administrative proceeding commenced by the Division of Insurance pursuant to G. L. c. 30A, G. L. c. 175, §§ 5 & 22H, G. L. c. 176D, and 801 Code Mass. Regs. § 1.01 (6) (d), the Commissioner of Insurance was without authority to make a binding interpretation of a contract to which he was a party or to determine conclusively whether the other party, an insurance company, had violated the contract. [359-362]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 30, 1989.

The case was reported by *Abrams*, J.

*David I. Finnegan* for the plaintiff.

*Jon Laramore*, Assistant Attorney General (*Thomas A. Barnico*, Assistant Attorney General, with him) for the Commissioner of Insurance & another.

*Robert W. Mahoney, Michael R. Heyison, Mark G. Matuschak & Deborah J. Hart*, for Commonwealth Automobile Reinsurers, amicus curiae, submitted a brief.

ABRAMS, J. Warner Insurance Company (Warner) challenges a decision of the Commissioner of Insurance (Commissioner)[2] revoking its license to write insurance in Massa-

---

[1]First deputy commissioner of insurance.

[2]The term "Commissioner" refers to the Commissioner of the Division of Insurance, acting through any of his personnel, including the first deputy commissioner. During the underlying administrative proceeding, the

chusetts after finding that a private settlement agreement and several insurance statutes had been violated. Warner argues that (1) the Commissioner lacked jurisdiction to interpret the settlement agreement to which he was a party or to adjudicate his own claim that the agreement had been violated; (2) the settlement agreement does not apply to Warner's operation in Massachusetts; (3) even if it does apply, Warner has not breached the agreement; and (4) any breach of the agreement by Fireman's Fund Insurance Companies[3] does not warrant revocation of Warner's license. We agree with Warner that the Commissioner's expertise does not extend to the interpretation of the agreement. We therefore remand the case to the single justice with an instruction that she transfer the case to Superior Court for resolution of the factual disputes and consideration of the legal issues.

We summarize the undisputed facts. On July 1, 1987, claiming it could no longer profit from the sale of insurance in Massachusetts and without giving any prior notice, representatives of Fireman's Fund informed the Commissioner

---

Commissioner's post became vacant. Acting pursuant to G. L. c. 268A, § 6, the Governor assigned all nonministerial responsibilities of the Commissioner to the first deputy until such time as a new Commissioner was sworn in. The first deputy conducted the administrative hearing and issued the decision revoking Warner's license. The first deputy has been named as a party because Warner's appeal to the Commissioner under G. L. c. 26, § 7, was denied on the ground that the first deputy had been assigned the duties of the Commissioner, and that the decision was effectively that of the Commissioner. The parties agree that, for the purposes of this appeal, the decision is a final decision of the Commissioner.

[3]Fireman's Fund Insurance Companies licensed to write commercial insurance in Massachusetts prior to November 13, 1987, were Fireman's Fund Insurance Company (FFIC) and six of its wholly-owned subsidiaries: the American Insurance Company, Associated Indemnity Corporation, National Surety Corporation (NSC), American Automobile Insurance Company, Interstate Indemnity Company, and Chicago Insurance Company. Collectively, all seven are referred to as "Fireman's Fund."

In addition, one insurer under common ownership with Fireman's Fund was authorized to engage in the reinsurance business under G. L. c. 175, § 20 (1988 ed.), and another wrote surplus lines as provided by G. L. c. 175, § 168.

and Commonwealth Automobile Reinsurers (CAR),[4] that Fireman's Fund had deliberately allowed its licenses to expire, and that Fireman's Fund considered itself to be no longer licensed to write insurance in Massachusetts. Fireman's Fund representatives also informed CAR that Fireman's Fund no longer considered itself a member of, or servicing carrier for CAR.

The Division of Insurance (division) advised Fireman's Fund that it could not unilaterally abandon the Massachusetts market on less than one day's notice and renewed Fireman's Fund licenses for the following policy year. On July 3, 1987, the division filed suit in Superior Court and obtained an order temporarily restraining Fireman's Fund from surrendering its insurance licenses and terminating its insurance business in Massachusetts without first fulfilling its responsibilities as an insurer and a CAR servicing carrier, as required by statute and CAR's Rules of Operation. On July 10, 1987, the restraining order was continued by stipulation until further order of the court.

Between July 3 and November 13, 1987, the division, CAR, and Fireman's Fund engaged in settlement negotiations. Initially, Fireman's Fund proposed either (1) to settle its obligation to CAR by paying $25,000,000 and withdrawing completely from the Massachusetts insurance market; or (2) to pay CAR $75,000,000 and withdraw only from the automobile insurance market. Negotiations quickly focused on the first proposal.

---

[4] CAR is the statutory mechanism which guarantees the availability of motor vehicle insurance coverage to high risk applicants who are unable to obtain coverage in the voluntary market. See G. L. c. 175, § 113H (1988 ed.), and Plan and Rules of Operation of CAR. All insurance companies writing motor vehicle insurance in Massachusetts are members of CAR and approximately twenty companies, representing approximately 90% of the motor vehicle insurance market are appointed by CAR as servicing carriers. A servicing carrier must issue motor vehicle insurance to virtually all applicants and then may cede undesirable high risk policies to CAR, where premiums, losses, and expenses are shared by all CAR members. American Insurance Company, a subsidiary of FFIC and party to the settlement agreement, served as a servicing carrier in 1984.

On October 14, 1987, with negotiations at an impasse, Fireman's Fund filed suit in Superior Court challenging the Commissioner's power unilaterally to renew its licenses, and claiming that it was no longer a member of CAR and owed no financial obligation to CAR.

On November 13, 1987, the seven companies constituting Fireman's Fund, CAR, and the Commissioner signed an agreement to settle the two lawsuits. Stipulations of dismissal with prejudice were simultaneously executed and filed in the Superior Court. The court entered judgments of dismissal in both cases.

Immediately prior to the agreement's execution, the Commissioner met privately with Joseph Brown, vice chairman of Fireman's Fund, who testified at the administrative proceeding that he assured the Commissioner that Fireman's Fund would not try to maintain the business it was leaving behind. Brown testified that he "commented to [the Commissioner] that at some point in the future we intended to once again be represented in . . . Massachusetts to be able to write the commercial business" but not personal automobile insurance. According to Brown, the Commissioner responded, "When that time comes, we will have to talk about it." The administrative record shows that Brown did not question the Commissioner about his response or seek a clarification as to the Commissioner's understanding of the agreement.

In a second meeting attended by representatives of all of the parties, the Commissioner indicated that, at the earlier meeting, Brown had promised to seek approval before returning to Massachusetts. According to testimony in the record, Brown did not dispute this account.

Paragraph one of the settlement agreement provides that, "[a]s of the date of this Agreement, Fireman's Fund will no longer be licensed to issue or to sell insurance policies of any kind in the Commonwealth and shall not issue or sell insurance policies without a license." Paragraph four required Fireman's Fund to pay $45,000,000 to CAR in complete satisfaction of its obligations and liabilities to CAR for policy years 1987 and 1988.

The settlement agreement contains mutual clauses, releasing the parties from all claims that were or could have been raised prior to the agreement. The agreement includes an integration clause stating that it "represents the full and entire agreement between the parties, superseding any other prior or contemporaneous written or oral agreements or understandings . . . ." The agreement expressly states that the Commissioner retains full statutory and regulatory authority over Fireman's Fund's reinsurance and surplus lines, which were unaffected by the agreement.

Following execution of the settlement agreement, Fireman's Fund "dismantled its entire operation in Massachusetts by severing relationships with its 375 agents, terminating some 600 employees, . . . allow[ing] all of the policies written in Massachusetts to expire," and paying $45,000,000 to CAR, as required by the settlement agreement. On September 29, 1988, National Surety Corporation (NSC), a wholly-owned subsidiary of Fireman's Fund and a party to the settlement agreement, purchased Warner, an Illinois insurance corporation licensed in Massachusetts to write most insurance, but not motor vehicle insurance. At that time, Warner had no business, no employees, and no policyholders in Massachusetts.

On October 12, 1988, the division commenced an administrative action pursuant to G. L. c. 30A, c. 175, §§ 5 and 22H, c. 176D, and 801 Code Mass. Regs. § 1.01 (6) (d), ordering Warner to show cause why the Commissioner should not revoke Warner's license to write insurance in the Commonwealth for alleged violations of the insurance statutes. The division was allowed to amend its order to show cause to add Fireman's Fund.

After an evidentiary hearing, the Commissioner issued a decision revoking Warner's license. The Commissioner ruled that the plain language of the settlement agreement (1) required Fireman's Fund to completely withdraw from the Massachusetts market; (2) prohibited Fireman's Fund from directly benefiting from the transaction of insurance business in Massachusetts, "such benefit being the ability to profit di-

rectly from the sale of insurance in Massachusetts"; and (3) obligated Fireman's Fund to receive the approval of the Commissioner before returning to the Commonwealth. He ruled that the agreement's meaning also could be "determined from the evidence pertaining to events surrounding the negotiation and execution of the settlement agreement."

The Commissioner ruled that Fireman's Fund exercises pervasive control over Warner's operation, and that any insurance sold by Warner inures to the direct benefit of Fireman's Fund, and that "Fireman's Fund is effectively issuing and selling insurance policies in Massachusetts in a manner which violates the Settlement Agreement." He concluded that, because the Commissioner had not given approval for Fireman's Fund's acquisition and operation of Warner, this constituted a breach of the settlement agreement, as well as the covenant of good faith and fair dealing implied in the agreement by law. Finally, he concluded that this breach of the settlement agreement constituted a violation of G. L. c. 175, §§ 5 and 22H, requiring revocation of Warner's license to write insurance in the Commonwealth.[5]

On June 30, 1989, pursuant to G. L. c. 175, § 5, Warner commenced the present action for review of the Commissioner's decision by a single justice of this court.[6] On July 18, the single justice stayed revocation of Warner's license pending determination of the case and reserved and reported the case without decision to the full court.

Relying on Federal cases, Warner asserts that jurisdiction to interpret the settlement agreement and adjudicate the breach of contract claim lay in the Superior Court and not in the Commissioner's own administrative proceeding, because

[5]The Commissioner found it unnecessary to decide whether Warner engaged in unfair or deceptive acts or practices under G. L. c. 176D, §§ 6 and 7, because the same remedy for violation of those sections — revocation of Warner's license — was warranted by Warner's violation of G. L. c. 175, §§ 5 and 22H.

[6]Pursuant to G. L. c. 30A, § 14, Fireman's Fund has appealed the decision to the Superior Court. See Fireman's Fund Ins. Co. vs. Commissioner of Ins., Superior Court, Suffolk Co., CA No. 89-4342 (1989).

that court retained inherent "authority over the underlying claim and [had] discretion to reopen the claim or to adjudicate and enforce its settlement remedy" pursuant to Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828, 829 (1974). See, e.g., *Dankese* v. *Defense Logistics Agency*, 693 F.2d 13, 16 (1st Cir. 1982); *Aro Corp.* v. *Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.), cert. denied, 429 U.S. 862 (1976); *Kelly* v. *Green*, 334 F.2d 434, 436-437 (3d Cir. 1964). But see *Fairfax Countywide Citizens Ass'n* v. *County of Fairfax*, 571 F.2d 1299, 1306 (4th Cir.), cert. denied, 439 U.S. 1047 (1978), finding "no independent basis for asserting jurisdiction over the contract dispute." Warner's reliance on these cases is unnecessary. The Massachusetts Superior Court is a court of general jurisdiction. It exercises original jurisdiction over all civil actions, except those of which other courts have exclusive jurisdiction, G. L. c. 212, § 4, and shares general equity jurisdiction with this court pursuant to G. L. c. 214, § 1. The Superior Court has jurisdiction over a contract dispute and, therefore, resort to the same jurisdictional principles employed by Federal decisions is not required. Cf. *Fairfax Countywide Citizens Ass'n, supra* at 1304. In sum, the Superior Court is the appropriate forum to interpret and adjudicate a complaint alleging breach of contract.[7]

The insurance statutes do not give the Commissioner authority to make a binding interpretation of a contract to which he is a party or to determine conclusively whether the other party has violated that contract. Cf. *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746, 753 (1979) (finding

---

[7] Warner argues that the settlement agreement is a consent decree or "consent arrangement" and must be strictly construed on the terms within the four corners of the document. We do not agree. Nothing in the record suggests that the trial court adjudicating the 1987 action incorporated the settlement agreement into its judgment of dismissal or any other order. See, e.g., *Loring* v. *Morse*, 332 Mass. 57 (1954). Cf. *Moore* v. *Moore*, 389 Mass. 21 (1983). Thus, the settlement agreement is a private contract "distinct from the claim giving rise to the original litigation," *Fairfax Countywide Citizens Ass'n, supra* at 1305. Cf. *Peters* v. *Wallach*, 366 Mass. 622, 628 (1975) (unexecuted settlement agreement enforceable as a contract), and its construction is governed by general contract law.

authority to interpret a contract between two private parties where contract claim "amount[s] to an attack on the entire system by which Blue Shield compensates participating physicians," a matter "peculiarly within the [Commissioner's] specialized field"). General contract questions are not "within the specialized expertise of the Commissioner. Indeed, . . . they lie within the specialized expertise of courts, straightforward breach of contract claims being part of a court's daily routine." *Lapierre* v. *Maryland Casualty Co.*, 14 Mass. App. Ct. 248, 250 (1982).

The Superior Court also has authority to make binding declarations of legal relations under contracts, including the determination of any question of construction or validity of a contract, see G. L. c. 231A, §§ 1 and 2; *School Comm. of Cambridge* v. *Superintendent of Schools of Cambridge*, 320 Mass. 516, 520 (1946), or to order specific performance. See, e.g., *Sanford* v. *Boston Edison Co.*, 316 Mass. 631, 634 (1944).

We shall leave to the Superior Court, in the first instance, the determination whether Fireman's Fund violated the settlement agreement when it purchased Warner. If there was no violation, the revocation of Warner's license was not proper. If there was a violation, the Superior Court judge might conclude that the proper remedy for that violation is that Fireman's Fund must sell Warner or that the Commissioner's revocation of Warner's license was appropriate. The interests of any third parties may be relevant in selecting a remedy. If revocation was appropriate, the Commissioner has ample statutory authority to enforce the remedy. See G. L. c. 175, §§ 5 and 22H, and G. L. c 176D.[8] See also *Gordon* v. *Hardware Mut. Casualty Co.*, 361 Mass. 582, 584-586 (1972). In deciding whether Fireman's Fund violated the settlement agreement, the judge will have to determine whether any obligation on Fireman's Fund not to re-

---

[8]Generally, the Commissioner has the authority to conduct adjudicatory hearings and to order the revocation or suspension of licenses issued by the Division of Insurance. See G. L. c. 175, §§ 5 and 22H, and G. L. c. 176D, §§ 6 and 7.

turn to Massachusetts by purchase of Warner, or some other licensed insurer not writing motor vehicle liability insurance, should be inferred.[9] Fireman's Fund made no explicit undertaking in the settlement agreement not to return to Massachusetts. The conversations between Joseph Brown of Fireman's Fund and the Commissioner may not be relevant to the issue of an implied agreement not to return as of right. Perhaps evidence of the conversations is not admissible because the agreement states that it "represents the full and entire agreement between the parties, superseding any other prior or contemporaneous written or oral agreements or understandings" (with an exception that seems irrelevant). The conversations may, in any event, have simply left the issue unresolved, with neither Fireman's Fund nor the Commissioner accepting the position of the other. On the other hand, there may have been a mutual understanding concerning Fireman's Fund's return to Massachusetts inherent in the settlement agreement because of Fireman's Fund's departure from the Commonwealth pursuant to that agreement.

The Commissioner's decision is set aside and the case is remanded to the single justice there to be transferred to the

---

[9]"The agreement is to be read 'in a manner to give effect to the chief design to be accomplished by the instrument,' and [courts] are to look 'through the form to the substance and purpose of the agreement' and to mould the decree 'in accordance with what the parties may fairly be presumed to have intended. Every contract implies good faith and fair dealing between the parties to it.' " *Kerrigan* v. *Boston*, 361 Mass. 24, 33 (1972), quoting *Clark* v. *State St. Trust Co.*, 270 Mass. 140, 152-153 (1930). The Superior Court's function is to give the contract a construction that is reasonable, equitable, and expresses the intent of the parties. *Glick* v. *Greenleaf*, 383 Mass. 290, 296 (1981); *Kerrigan* v. *Boston*, 361 Mass. 24, 33 (1972); *Martino* v. *First Nat'l Bank of Boston*, 361 Mass. 325, 332 (1972); *Maxwell-Davis, Inc.* v. *Hooper*, 317 Mass. 149, 152 (1944); *Clark* v. *State St. Trust Co.*, 270 Mass. 140, 153 (1930).

Superior Court for further proceedings consistent with this opinion.[10]

*So ordered.*

---

[10]The stay issued by the single justice of this court is extended for twenty-one days after the date of the issuance of the rescript herein to give Warner an opportunity to seek a stay from the Superior Court.

In the Superior Court, a determination should be by the judge whether this matter should be joined with the complaint by Fireman's Fund Ins. Co. *vs.* Commissioner of Ins. See note 6, *supra.* See also Mass. R. Civ. P. 19, 365 Mass. 765 (1974).