Connolly, J.
On March 27, 1995, the plaintiffs, Concourse Ticket Agency, Hub Ticket Agency, Ringside Ticket Agency, Roth Ticket Agency, Tyson Ticket Agency, Ltd. and Valenti Ticket Agency (“Ticket Holders”), filed a motion for a preliminary injunction pursuant to Mass.R.Civ.P. 65(b) to enjoin the defendants, Robert K. Kraft, Kraft Patriots, Inc., and John Doe, d/b/a New England Patriots Limited Partnership (the “Patriots”), from cancelling the Ticket Holders’ 1995 New England Patriots chairback seat season tickets, and otherwise impairing or impeding the Ticket Holders from renewing their 1995 chairback seat season tickets at a fair and non-discriminatory price of $500.00 per chairback seat season ticket. The Ticket Holders have sued the Patriots for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and breach of G.L.c. 93A, §§2 and 11. In support of their motion, the Ticket Holders argue that the risk of irreparable harm to them without the issuance of the requested injunction, together with the likelihood they will succeed on the merits, outweighs any risk of irreparable harm to the Patriots. In opposition, the Patriots argue that the Ticket Holders show no likelihood of success on the merits, have suffered no irreparable harm and would cause great harm to the Patriots by obtaining the relief sought. For the reasons discussed below, the Ticket Holders’ motion for preliminary injunction is ALLOWED.
BACKGROUND
Among the seating options at Foxboro Stadium,[3] the Patriots offer a group of seats known as the “chairback seats.” These seats are advertised as the prime location seats, since they are located close to the field between the thirty-yard lines. The Ticket Holders have purchased chairback seat season tickets from the Patriots and their predecessor entities for approximately twenty years. Collectively, the Ticket Holders purchased one hundred and forty-eight chairback seat season tickets from the Patriots during the 1994 season at fifty dollars per ticket per game. At the end of the 1994 season, the Patriots offered each Ticket Holder the opportunity to purchase their chairback seat tickets to all home playoff games to be held at Foxboro Stadium. Each Ticket Holder accepted the Patriots’ offer and paid the consideration demanded. After the Team became ineligible to play the 1994 home playoff games, the Patriots offered either to refund the 1994 playoff money it had received for the Ticket Holders or to credit the Ticket Holders’ accounts toward renewal of their season tickets for the 1995 season. The Patriots’ offer to credit the 1994 playoff money toward the renewal of their 1995 season tickets was accepted by each Ticket Holder.
On or about February 22, 1995, each Ticket Holder received a letter from the Patriots informing them that the tickets they purchased for the season would be included in an exclusive “Playoff Club” season ticket package that offered the purchaser complimentary Sunday papers, a pregame speech by members of the Patriots front office and appearances by Patriot Cheerleaders. The Patriots charged two thousand five hundred dollars per chairback seat season ticket, or two hundred fifty dollars per seat per game to be a member of the Playoff Club. The Patriots have demanded that only the Ticket Holders, not any other corporate or individual chairback seat season ticket holder, pay the additional two thousand dollars per ticket or forfeit their 1995 chairback seat season tickets. After receiving the Patriots’ demand, the Ticket Holders commu *447 nicated this demand to their regular clients who have historically purchased these tickets. The Ticket Holders claim that not one customer agreed to pay the increased price of two hundred fifty dollars per ticket, and no customer desired membership in the Playoff Club.
On March 15, 1995, counsel for the Ticket Holders submitted a demand letter to the Patriots pursuant to G.L.c. 93A, §§2 and 11, demanding that the Patriots cease and desist from singling out the Ticket Holders for the five hundred percent increase in chairback season tickets. Subsequently, on March 17, 1995, each Ticket Holder received a letter from the Patriots stating that the Patriots had cancelled the Ticket Holders’ chairback seat season tickets for their failure to meet the payment deadline.
DISCUSSION
In evaluating a request for preliminary relief the court must first evaluate, in combination, the moving party’s claim of injury and its chance of success on the merits. If the failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the court must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. The raw amount of conceivable irreparable harm which each party may suffer does not matter; rather, the court must evaluate the risk of such harm in light of the party’s chance of success on the merits. Packaging Industries Group, Inc., v. Cheney, 380 Mass. 609, 617 (1980).
If the dispute is not between private parties, in addition to the principles set forth in Packaging Industries, the judge should consider the risk of harm to the public interest. Biotti v. Bd. of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984); GTE Products Corporation v. Jefferson Davis Steward, Third, 414 Mass. 721, 723 (1993).
In evaluating the Ticket Holders’ claims and the evidence presented, this Court believes there is a likelihood of success on the merits. The Court will focus on Count III, Breach of Duty of Good Faith and Fair Dealing, and Count V, Chapter 93A, §11.
“(T]he rule is clear in Massachusetts that every contract is subject to an implied covenant of good faith and fair dealing.” Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 473 (1991) citing Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 362 n.9 (1990); Kerrigan v. Boston, 361 Mass. 24, 33 (1972). “The implied covenant of good faith and fair dealing provides ‘that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . .’ ” Anthony’s Pier Four, Inc., 411 Mass, at 472 citing Drucker v. Roland Wm Jutras Assocs., 370 Mass. 383, 385 (1976) quoting Uproar Co. v. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir. 1936), cert, denied, 298 U.S. 670 (1936). One party’s use of a discretionary right under an agreement as a pretext constitutes a breach of the covenant of good faith and fair dealing. Anthony’s Pier Four, Inc., 411 Mass, at 473 (court found violation of implied covenant of good faith and fair dealing when one party used its discretionary right, applying pressure on the other party, in an attempt to force that party to sweeten the deal) citing Northern Heel Corp. v. Compo Indus., Inc., 851 F.2d 456,471 (1st Cir. 1988) (applying Massachusetts law, court found violation of implied covenant of good faith and fair dealing in repudiation that was ‘but a tool engineered to serve the illicit purpose’ of extracting price concessions).
The Ticket Holders claim that under the long-standing agreement between the Patriots and the Ticket Holders, they had a right to renew their season tickets. Arguably, the Patriots expressly granted this right to the Ticket Holders and accepted consideration for the renewal right by crediting the money received from the Ticket Holders for the 1994 playoff tickets toward the renewal of their 1995 season tickets. The Ticket Holders allege that the five hundred percent increase demanded solely from the Ticket Holders and not the general public is “arbitraiy, unreasonable or discriminatory” in violation of the implied covenant of good faith and fair dealing. Moreover, the Ticket Holders state that the Patriots’ demand that they buy a two thousand dollar membership in the Playoff Club in return for renewing the season tickets they have a right to renew, is precisely the type of “deal sweetening” coercion that Anthony’s Pier Four, Inc. classifies as a breach of the covenant of good faith and fair dealing. A finder of fact could reasonably find that the five hundred percent increase in the Ticket Holders’ ticket prices is unreasonable and discriminatory. With this premise in mind, the Court holds that by unreasonably raising the price of the tickets, the Ticket Holders would likely succeed in proving that the Patriots willfully “destroy(ed) or injur[ed] [their] right to receive the fruits of the contract and thus violated the implied covenant.” Anthony’s Pier Four, Inc., 411 Mass, at 472.
The Massachusetts Consumer Protection Act, G.L.c. 93A, prohibits unfair methods of competition and unfair or deceptive acts or practices. “This prohibition is extended to those engaged in trade or commerce in business transactions with others similarly engaged” by G.L.c. 93A. Anthony’s Pier Four, Inc., 411 Mass, at 474 quoting Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 779 (1986) citing Manning v. Zuckerman, 388 Mass. 8, 12 (1983). The law recognizes that there may be “cases where an act might be unfair if practiced upon a commercial innocent yet would be common practice between two people engaged in business.” Spence v. BostonEdison Co., 390 Mass. 604, 616 (1983). Accordingly, the business *448 plaintiff is held to a higher standard of proof than the less sophisticated plaintiff. A business plaintiff, as the Ticket Holders, must show that the act would be objectionable to a seasoned businessman. “The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979).
The Court agrees with the Ticket Holders argument that the Patriots’ alleged breach of the implied covenant of good faith and fair dealing establish that the Patriots’ actions were unfair or deceptive in violation of G.L.c. 93A, §11. See Anthony’s Pier Four, Inc., 411 Mass, at 476.
A denial of the Ticket Holders’ motion for preliminary injunction would subject them to a substantial risk of irreparable harm. Irreparable injury has been defined as “a loss of rights that cannot be vindicated should [the moving party] prevail after a full hearing on the merits.” Packaging Indus. Group, Inc., 380 Mass at 616. The loss of a business’ reputation and goodwill constitutes irreparable injury. See e.g., Basicomputer Corp. v. Scott, 973 F.2d 507 (6th Cir. 1992); Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488 (1986). In losing their premium season tickets, the Ticket Holders allegedly have suffered, and will continue to suffer, a severe loss of reputation and goodwill in their industry. As previously mentioned, the Ticket Holders’ clients have refused to pay the price demand of the Patriots. The Ticket Holders claim that several of these customers have stated that they will seek premium Patriots’ tickets elsewhere and have expressed surprise and annoyance that the Ticket Holders cannot deliver tickets as they have in the past. Arguably, the Ticket Holders’ business success is dependent on their reputation for being able to offer premium seats to events such as Patriots’ games. A public perception that the Ticket Holders can no longer offer a useful service could threaten the existence of their business.
The Court must balance the risk of harm to the Ticket Holders against any similar risk of irreparable harm which granting the injunction would create for the Patriots. The Patriots allege that they will suffer great harm if the Court orders them to disassociate from the Playoff Club the one hundred plus seats at issue. Since March 15, 1995, the Patriots claim it has sold at least nine memberships to the Playoff Club. Additionally, they represent that they have aggressively marketed Playoff Club memberships to the public by sending out hundreds of letters offering these prime chairback seats as part of the Playoff Club package. If the Patriots are compelled to sell these tickets pursuant to the Ticket Holders for five hundred dollars per seat per season, they claim they would be forced to inform hundreds of their fans that previously available Playoff Club memberships are no longer available.
In balancing the harms between the Ticket Holders and the Patriots, the scale tips in favor of the Ticket Holders. If the Patriots prevail on the merits, they can recover money damages from the Ticket Holders for the difference between the ticket prices of two thousand five hundred dollars and five hundred dollars. However, if the preliminary injunction is denied and the Ticket Holders prevail on the merits, while they could also recover monetary damages, the damage to their business reputations could not be compensated.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Ticket Holders’ motion for preliminary injunction is ALLOWED.

The Patriots play home games at Foxboro Stadium in Foxboro, Massachusetts.