Tucker, Richard T., J.
On February 3, 2009, the plaintiff, Honey Farms, Inc. (“Honey Farms”), filed a second amended complaint against numerous defendants, including OPW Fueling Components, Inc. (“OPW”), alleging that the defendants are liable for damages caused when methyl tertiary butyl ether (“MTBE”), a gasoline additive, leaked from underground gasoline storage tanks at the Honey Farms convenience store and gas station located at 36-38 Worcester Road in Charlton, Massachusetts. The matter is before the court on OPWs motion for judgment on the pleadings, pursuant to Mass.R.Civ.P. 12(c), to dismiss Count II of Honey Farms’ complaint for failure to state a claim.[2] For the following reasons, the motion is ALLOWED.
*106 BACKGROUND
The following facts are drawn from the complaint and taken as true for the purposes of this motion. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n.7, 636 (2008).
In August 2002, Honey Farms leased property in Charlton, Massachusetts, for the purpose of developing a Honey Farms convenience store and gas station. As part of a franchise agreement with Exxon Mobil Corp., Honey Farms was required to purchase gasoline-dispensing equipment. In September 2002, Honey Farms purchased the necessary equipment from Wildco Petroleum Equipment, Inc. (“Wildco”). The equipment purchased from Wildco included vacuum-assist nozzles that OPW had manufactured.
In January 2004, Honey Farms discovered MTBE contamination beneath the surface of its properly. Honey Farms alleges that the contamination was caused by the over-pressurization of its underground tank system, which occurred because the gasoline-dispensing equipment, which included OPWs vacuum-assist nozzles, was incompatible with the onboard refueling vapor recovery systems installed in many motor vehicles manufactured and sold since 1998. Honey Farms incurred considerable costs to replace the equipment and remediate the MBTE contamination. This action followed.
DISCUSSION
The Supreme Judicial Court recently adopted the standard of review for motions to dismiss set forth by the United States Supreme Court in Bell Atl Corp. v. Twombly, 127 S.Ct. 1955 (2007): “While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his entitle [ment] to relief requires more than labels and conclusions ... Factual allegations must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp., 127 S.Ct. at 1964-65 (internal quotations omitted). Under this heightened standard, what is required at the pleading stage are factual allegations that possess enough heft to show that the pleader is entitled to relief. Id.
Count II of Honey Farms’ second amended complaint alleges that each defendant breached an implied covenant of good faith and fair dealing. OPW contends that the count should be dismissed because Honey Farms has failed to allege the existence of a contract between them. In opposition, Honey Farms contends that it was an intended third-party beneficiaiy of a distribution agreement between OPW and Wildco, and that OPWs failure to warn Wildco and Honey Farms of the limitations of its vacuum-assist nozzles constituted a breach of the implied covenant of good faith and fair dealing.
Every contract implies good faith and fair dealing between the parties to it. Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 362 n.9 (1990). The implied covenant of good faith and fair dealing provides that “neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-72 (1991) (citations omitted). “The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.” Uno Restaurants v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). It follows, therefore, that a plaintiff seeking recovery under a third-party beneficiaiy theory must prove that both (1) a contract existed and (2) the plaintiff was an intended beneficiary of that contract. Baldwin v. Mortimer, 403 Mass. 142, 144 (1988).
Although Honey Farms contends in its opposition that it was an intended third-party beneficiaiy of an agreement between OPW and its distributor, Wildco, it has not even alleged that a distribution contract existed between OPW and Wildco. Honey Farms’ position appears to be that a contract between OPW and Wildco may be inferred from the fact that Wildco sold Honey Farms equipment that included OPW parts. The assumption that a contract existed, however, does not amount to a factual allegation sufficient to raise Honey Farms’ right to relief above a speculative level. See Iannacchino, 451 Mass. at 636.
Even assuming, however, that the complaint had properly alleged the existence of a contract between OPW and Wildco, it fails to allege that Honey Farms was an intended beneficiaiy of that contract. See Baldwin, 403 Mass. at 144. A contract is intended for a third party’s benefit “when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act . . .” Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982), quoting Brewer v. Dyer, 7 Cush. 337, 340 (1851), and adopting Restatement (Second) of Contracts §302. Although Honey Farms now claims in its opposition that OPW and Wildco entered into a distribution agreement for the benefit of Honey Farms, as an eventual end-user of OPWs nozzles, it has not pled sufficient facts to support its claim. Compare id. at 195 (plaintiffs complaint alleged that defendants entered into contract “for the benefit of’ her decedent).
While an intended beneficiary may recover under a contract made for its benefit, “[a]n incidental beneficiary acquires by virtue of the promise no right against the promisor or promisee” (emphasis in original). Flattery v. Gregory, 397 Mass. 143, 148 (1986), quoting Restatement (Second) of Contracts §315. In Flattery, *107 on which Honey Farms relies, the Supreme Judicial Court held that an injured driver was the intended beneficiary of an agreement between an insurance agent and its insured, the alleged tortfeasor, where the insurance agent allegedly promised to provide its insured with increased-limit, optional liability coverage that would potentially inure to the benefit of an injured party, such as Flattery, if the insured was legally responsible for the accident. Id. at 149. In that case, although the injured driver had not been identified at the time the promise to provide optional coverage was made, the Court found that he was an intended beneficiary, rather than an incidental one, because the standard insurance policy in place at the time obliged the insurer to pay damages directly to a class of individuals that included the injured driver. See id. at 149-50, citing Restatement (Second) of Contracts §302, illustration 3 (1981) (“B promises A to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D and E. If the promise is interpreted as a promise that B will pay C, D and E, they are intended beneficiaries . . . ; if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries”).
Honey Farms’ reliance on the holding in Flattery is misplaced. Here, there is no allegation that Wildco and OPW contracted with the express understanding that OPW would supply its nozzles for the benefit of end users such as Honey Farms. To the contrary, the complaint simply alleges that Wildco sold to Honey Farms certain nozzles that OPW had manufactured. Absent any assertion that OPW and Wildco contracted for the particular benefit of gas stations such as Honey Farms, the most that can be inferred from the complaint is that OPW provided Wildco with nozzles so that Wildco could in turn supply gas stations with equipment.[3] Such an arrangement would, at most, make Honey Farms an incidental beneficiary of any distribution agreement between OPW and Wildco, and would preclude Honey Farms from recovering against OPW on a contract claim. See id. at 148. Based on the allegations in its complaint, Honey Farms cannot maintain its contract claim against OPW. Accordingly, Count II shall be dismissed.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant OPW Fueling Component, Inc.’s motion to dismiss Count II of the plaintiffs second amended complaint is ALLOWED.

Once the pleadings are closed, a defendant’s motion for judgment on the pleadings pursuant to Rule 12(c) operates as a motion to dismiss akin to a motion under Rule 12(b)(6). Jarosz v. Palmer, 436 Mass. 526, 529-30 (2002).

See Restatement (Second) of Contracts §302, illustration 19 (1981) (“A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B’s promise ...”). Applying this analogy to the allegations in Honey Farms’ complaint, Wildco contracted to supply gasoline-dispensing equipment to Honey Farms. OPW then (presumably) contracted with Wildco to supply nozzles for use with the gasoline-dispensing system. Under these facts, Honey Farms would be an incidental beneficiary of OPWs promise.