# United States Court of Appeals

## For the First Circuit

No. 13-2296

ADDIEL SOTO-FELICIANO,

Plaintiff, Appellant,

v.

VILLA COFRESÍ HOTELS, INC. AND SANDRA Y. CARO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Lipez and Barron,
Circuit Judges.

Juan M. Frontera-Suau, with whom Carlos J. Jiménez-Torres and Frontera Suau Law Offices, PSC, were on brief, for appellant.
Israel Roldán-González for appellees.

February 20, 2015

**BARRON, Circuit Judge.** More than a decade ago, Addiel Soto-Feliciano began working in the kitchen at the Villa Cofresí Hotel, a beachfront, family-run establishment in Rincón, Puerto Rico. By January of 2010, Soto had become the hotel's head chef. By March of that year, he had been fired. This appeal turns on the events that led to that outcome. Soto alleges that a review of the record reveals that he was fired because of his age and in retaliation for his efforts to assert his rights against this alleged discrimination. The District Court disagreed and granted summary judgment for the defendants. We reverse.

## I.

On November 4, 2010, Soto filed suit in federal court. He named as defendants the Villa Cofresí Hotel and Sandra Caro, the hotel's general manager in charge of human resources. Soto alleged violations of the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and Puerto Rico employment law, P.R. Laws Ann. tit. 29, § 146 (anti-discrimination); id. § 185 (wrongful termination). Soto sought back pay, lost benefits, compensatory damages, liquidated damages, attorney's fees, and an order directing the hotel to reinstate him and to cease discriminating against him on account of age.

In September of 2013, the District Court granted summary judgment for the defendants. The District Court then dismissed Soto's federal claims with prejudice and his state-law claims

without prejudice.  Soto now appeals that judgment.  We discuss the relevant facts in connection with our analysis.

## II.

We review the District Court's summary judgment ruling de novo.  Cracchiolo v. E. Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014).  In doing so, we "consider[] the record and all reasonable inferences therefrom in the light most favorable to the non-moving part[y]."  Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010).  We may decide in favor of the moving party -- here, the hotel and Sandra Caro -- "only if the record reveals 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

## III.

We begin with Soto's age discrimination claim under the federal Age Discrimination in Employment Act.  See 29 U.S.C. § 623(a)(1).  In a case that relies only on indirect evidence of discrimination, as Soto concedes this one does, we follow the familiar three-stage framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  We do so even though the Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), utilized in Title VII cases is appropriate in the ADEA context."  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 n.2 (2009).  And

that is because our Circuit "has long applied the McDonnell Douglas framework to ADEA cases."  Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 n.2 (1st Cir. 2009).

**A.**

The first stage of the inquiry concerns whether the plaintiff has made a prima facie case of age discrimination.  See McDonnell Douglas, 411 U.S. at 802.  The plaintiff's burden at this stage is "modest."  Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004).  He need only make a prima facie case, not a winning one.  To make that threshold showing, the plaintiff must "show that: 1) he was at least 40 years old at the time he was fired; 2) he was qualified for the position he had held; 3) he was fired, and 4) the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services."  Vélez, 585 F.3d at 447.

A plaintiff who meets the "low standard of showing prima facie discrimination," Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44 (1st Cir. 2002), "in effect creates a presumption that the employer unlawfully discriminated against the employee," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  In consequence of that presumption, at the second stage of the inquiry, the burden of production shifts to the employer.  To meet that burden, "the employer must articulate a legitimate

-4-

nondiscriminatory reason" for having taken the adverse employment action.  Zapata-Matos, 277 F.3d at 44.

If the employer offers such a reason, then we move to the third and final stage of the inquiry.  At this stage, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Vélez, 585 F.3d at 447-48 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).  To defeat a motion for summary judgment, though, the plaintiff need only show that his ability to meet that burden turns on a genuine issue of material fact.  See Burdine, 450 U.S. at 253 (distinguishing between "the plaintiff's ultimate and intermediate burdens," respectively); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824-25 (1st Cir. 1991).

**B.**

We start with the first stage of the inquiry.  The District Court concluded Soto made a prima facie case of age discrimination that was strong enough to shift the burden of production to the defendants.  We agree.

Soto was at least forty years of age at the time of his suspension and firing, which occurred on March 2 and March 10, 2010, respectively.  And the record shows that, after firing Soto, the hotel immediately divided his head-chef duties among Jesús Vargas (who worked in the kitchen) and Soto's two previous direct

supervisors, Héctor Pérez-Vélez (the restaurant and kitchen manager) and Héctor Méndez (the food and beverage manager). The record thus sufficiently supports Soto's contention that, at the time of the firing, the hotel had a continuing need for Soto's former duties. See Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 333-34 (1st Cir. 1997) (plaintiff may demonstrate continuing need for his services with evidence showing that plaintiff's job functions were absorbed by several employees of defendant); Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 760 (1st Cir. 1988) (same).

The record also provides sufficient support for Soto's further contention that he was qualified for his job. The record shows that Soto became head chef after working in the hotel's kitchen for a number of years. The record then shows that Soto held his job as head chef for at least a number of months. And, finally, the record shows that prior to his suspension, Soto had never received a formal written complaint from hotel management about his performance during his seven years of employment at the hotel. In light of the "low standard of showing prima facie discrimination," Zapata-Matos, 277 F.3d at 44, that evidence clearly suffices. See Meléndez v. Autogermana, Inc., 622 F.3d 46, 50-51 (1st Cir. 2010); Vélez, 585 F.3d at 448.

The defendants, however, contend Soto failed to make a prima facie showing that he was qualified. Specifically, the

defendants contend the record shows that Soto used profanity to such an extent that it generated complaints from co-workers and possibly also customers; that he expressed a bad attitude toward his supervisors; that he was insubordinate to managers or supervisors on at least a handful of occasions; that he frequently arrived late for work; that he made at least one threatening remark to a supervisor; and that he disrespected a fellow staff member's religion. The defendants therefore contend that Soto failed to meet "the employer's legitimate expectations," Meléndez, 622 F.3d at 50, and thus cannot show that he was qualified for his job at the time of his firing, see id.

But the defendants' challenge to Soto's prima facie showing with respect to whether he was qualified cannot succeed. As the District Court observed, the defendants rely on the same evidence concerning Soto's misconduct to support a further argument -- namely, that even if Soto made the required prima facie showing, his suspension and firing had nothing to do with his age and everything to do with his bad behavior on the job. Our precedents make clear, however, that we may not credit the same evidence that an employer puts forth to show its legitimate, nondiscriminatory reason for firing an employee to defeat that same employee's prima facie showing that he was qualified. "To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in

actuality a pretext designed to mask discrimination." Vélez, 585 F.3d at 448 (quoting Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003) (en banc)).

We thus conclude that Soto has put forth a sufficient prima facie case of age discrimination to survive summary judgment. And so, we move on the final two stages of the inquiry.

## C.

Soto concedes that the defendants, in response to his prima facie showing, have met their burden of articulating a nondiscriminatory reason for the suspension and firing: Soto's alleged misconduct on the job. Soto thus challenges only the defendants' contention -- and the District Court's conclusion -- that no rational jury could find that the defendants' asserted nondiscriminatory reason for firing Soto was merely a pretext for discriminating against him for being too old.

In evaluating Soto's contention at the summary judgment stage, the critical question is "whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age." Vélez, 585 F.3d at 452 (quoting Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007)). To make that showing, a plaintiff must do more than merely "impugn the veracity of the employer's justification." Mesnick, 950 F.2d at 824. A plaintiff must "elucidate specific facts which would enable a jury

to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." Id. (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)).

On a motion for summary judgment, however, we must consider the facts in the light most favorable to the non-moving party, which in this case is Soto. See Portrio Corp., 602 F.3d at 40. And we must keep in mind that "where a plaintiff in a discrimination case makes out a prima facie case" of age discrimination, as Soto has done, "and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." Hodgens v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998).

Despite these admonitions, the District Court still found that Soto had failed to make a minimally sufficient showing that the defendants' claimed nondiscriminatory reason for firing him was in fact a pretext for age discrimination. And thus the District Court refused to put Soto's case to the jury. The District Court reached that conclusion in two steps.

The District Court first determined that the record contained only one piece of evidence both that could be considered and that showed that age discrimination was the defendants' real motive for firing Soto. The District Court then compared that

evidence concerning the defendants' discriminatory motive to the competing evidence that the defendants had put forth regarding their concerns with Soto's misconduct. And, finally, the District Court concluded that this evidence of the defendants' concern with Soto's misconduct overwhelmed the evidence regarding the defendants' discriminatory motive to such an extent that the defendants were entitled to summary judgment. We review each step in the District Court's analysis.

**1.**

We start with the District Court's treatment of Soto's evidence of discriminatory motive. In assessing that evidence, the District Court considered only Soto's allegations regarding comments by Sandra Caro, the hotel's head of human resources and a member of the Caro family, which owned and operated the hotel.

According to Soto's deposition, Sandra Caro commented negatively on Soto's age in a meeting that she had with him on February 18, 2010. Specifically, Sandra Caro told Soto: "I understand that you are old to work at the cooking line and that your co-workers are also saying that you are old to work at the cooking line." Soto further testified that Sandra Caro said to him at that meeting: "You are no longer capable to work at the line because you are old. I am going to bring in a new chef. Maybe I can let you work only in banquets. You need some long vacations

-10-

because you are old and slow at the line. We at the Hotel Villa Cofresí are moving up, not down."

As the District Court acknowledged, however, Soto also offered evidence of similar age-related comments that another hotel employee had made. Soto testified that his direct kitchen supervisor, Héctor Pérez, made these age-related remarks "continually" during the summer of 2009. According to Soto, Pérez, the hotel's restaurant and kitchen manager, said to Soto throughout this period: "Fool you are too old"; "[f]ool, you are too slow." And while Pérez, unlike Sandra Caro, is not a named defendant, he was Soto's direct supervisor in the hotel kitchen. That makes his remarks, like hers, relevant to Soto's discrimination claim. See Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433-34 (1st Cir. 2000) (conduct of a supervisor may substantiate plaintiff's case at third McDonnell Douglas stage, even if not named as a defendant).

But the District Court refused to consider Pérez's remarks because Soto's complaint did not reference them. The District Court based that decision on our prior statement that "summary judgment is not a procedural second chance to flesh out inadequate pleadings." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990). Fleming, however, does not oblige a plaintiff to set forth in the complaint every fact of relevance to an otherwise properly pled claim, let alone every fact of relevance to

-11-

an as-yet-unfiled summary judgment motion that aims to defeat that same claim. And, unlike the plaintiff in Fleming, Soto is not introducing a new theory of liability in referencing Pérez's remarks. He is merely augmenting the evidentiary basis for the very same age discrimination claim that he had already sufficiently pled.

Thus, we must consider both Sandra Caro's and Héctor Pérez's remarks in assessing the strength of Soto's showing regarding the defendants' discriminatory motive. For as we have explained before, "evidence of age-related comments could support an inference of pretext and discriminatory animus." Domínguez-Cruz, 202 F.3d at 433; see also Mesnick, 950 F.2d at 824 ("comments by decisionmakers which denigrate those over forty" may constitute "circumstantial evidence that may be mined by a plaintiff" in age discrimination suits).

Here, the age-related comments at issue, if credited, are especially supportive of the age discrimination claim. Soto is not relying on age-related comments that put down those over forty years of age in general. Nor is he relying on age-related comments that are at best ambiguous as to whether they reflect an intent to target the statutorily protected class. Cf. Hodgens, 144 F.3d at 171-72 (noting that employer's remarks about employee's "absences" were not clearly aimed at absences protected by the Family Medical

-12-

Leave Act, as the majority of the employee's absences were not so protected).

Soto is instead relying on age-related comments that were directed at him in particular and that asserted that he was too old to continue to do his job. And, Soto contends, those comments came not simply from fellow employees but from Sandra Caro, "the key decisionmaker regarding his termination," Domínguez-Cruz, 202 F.3d at 433, and Héctor Pérez, "the plaintiff's direct supervisor," id.

Moreover, Soto alleges that Sandra Caro made her age-related remarks in a context that should give rise to particular concern. Soto contends she made these comments while speaking with him about his job performance, and that she did so immediately before she stated that she was thinking of hiring a new chef in his stead.

And, finally, Soto was suspended less than two weeks later, making the allegedly discriminatory remarks temporally proximate to, rather than remote from, the adverse employment action. Such temporal proximity, we have held, itself provides support for the inference that a discriminatory motive explains the subsequent suspension and firing. Cf. DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008), as corrected (July 10, 2008) ("[T]emporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" (quoting

-13-

Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007))).

Thus, no great inferential leap would be necessary for a jury to find from these comments that the defendants fired Soto due to his age, at least if these comments were considered on their own. See Hodgens, 144 F.3d at 171 ("Statements by supervisors carrying the inference that the supervisor harbored animus against protected classes of people or conduct are clearly probative of pretext."). With such evidence of discriminatory motive in the record, a rational jury would not have to rely on a "tenuous insinuation" to find that the employer's asserted reason for firing Soto "was actually a pretext for age discrimination." Mesnick, 950 F.2d at 826 (emphasis in original). This case, therefore, is not one in which the "vast majority of [plaintiff's] evidence related to pretext . . . [but] had nothing at all to do with age or with the employer's true motives." Id.

There remains, though, the issue whether, despite this evidence of discriminatory motive, the defendants' showing regarding Soto's alleged misconduct -- and the role that Soto's misconduct played in the decision to fire him -- still entitles the defendants to summary judgment. The District Court reached that very conclusion. The District Court found that the evidence that the defendants fired Soto for his misconduct was so strong that it overwhelmed any inference of discriminatory motive that the record

-14-

might otherwise permit a jury to draw.  But Soto argues that the evidence on which the District Court relied in this regard is not, in fact, that strong.  And so, we now turn to what the record shows on that point.

**2.**

To challenge the defendants' contention that Soto's misconduct motivated the adverse employment action, Soto relies chiefly on what the record does not show.  But to understand why the holes Soto highlights in the defendants' account might matter, we first need to lay out the case for the defendants' contention that the decision to fire Soto had nothing to do with his age and instead resulted entirely from his misconduct.  We will then be in a position to evaluate Soto's contention that the record reveals potentially significant gaps and inconsistencies in the defendants' proof on that point -- gaps and inconsistencies, Soto contends, that would permit a rational jury to find that the defendants' claimed misconduct-based reason for firing him is in fact a pretext.

To make the case that misconduct drove the decision to dismiss Soto, the defendants contend that Soto had been verbally warned about his loud use of profanity in the kitchen on a number of occasions prior to his suspension and firing.  The defendants also say Soto had been admonished verbally for being late to work. Against that background, the defendants then claim Soto engaged in

the following string of bad behavior in the days immediately leading up to his suspension on March 2, 2010, and his firing days later.

The first event occurred on February 17, 2010, Ash Wednesday. Soto allegedly made a disrespectful remark on that day to a Catholic waiter who had asked not to be given meat in accordance with his faith. The next day, Sandra Caro met with Soto about his constant use of profanity in the kitchen. At that meeting, Sandra Caro also raised her concern about Soto's remark to the waiter, who had complained about that remark to his supervisor. Sandra Caro told Soto in the course of their discussion that he was "slow" and was taking longer to prepare meals and that she wanted to know what the problem was. The defendants say Soto responded that working in the kitchen could be stressful, and that the heat and the volume of work could get to be too much.

The defendants next allege that, on February 23, Sandra Caro requested to speak with Soto. The defendants claim, however, that Soto responded by telling her over the phone that he had nothing to say to her. The defendants next assert that after Héctor Pérez asked Soto to prepare some fish on February 26, Soto responded by saying that Pérez, who was Soto's direct supervisor, should peel the fish himself. And, finally, the defendants claim that Soto made a threatening remark to that same supervisor on February 27. Specifically, the defendants allege that Soto told

-16-

Pérez to be careful with what the Caro siblings told him to do or say, and added that "[y]ou are a Christian man, and when something explodes, you too could get dirty."

This sequence of events culminated in a March 2, 2010, letter that the hotel sent to Soto. That letter informed Soto of his suspension. In giving the reasons for the suspension, the letter expressly referenced Soto's misconduct, including the two incidents of alleged insubordination (telling Sandra Caro he had nothing to say to her and telling Héctor Pérez to peel the fish himself) and the one supposedly threatening remark (to Pérez). The hotel then notified Soto of his termination eight days later. At no time was Soto's age referenced as a reason for either decision. Nor, the District Court noted, did Soto assert that age discrimination was the true reason for the suspension when he received the March 2 letter and responded to it in writing.

In finding this evidence strongly supportive of the defendants' case for summary judgment on the pretext issue, the District Court emphasized that Soto does not deny either that he had been verbally admonished for poor behavior in the past or that the specific incidents cited in the March 2 letter occurred. The District Court did acknowledge Soto's contention that the March 2 letter misconstrued the exchanges between him and Sandra Caro and Héctor Pérez, respectively. Soto contended that the letter took these exchanges out of context. But the District Court nonetheless

concluded that Soto failed to provide any basis for finding that the defendants did not believe those incidents were serious enough to warrant his suspension and firing.  And, the District Court ruled, it was the defendants' belief that mattered, not Soto's view of how justified those beliefs might have been.

Soto responds as follows.  He contends that if his conduct were truly such a source of concern as to place his continued employment in jeopardy, then concerns about these incidents would have been properly raised prior to March 2, when the suspension letter first referenced them.  And yet, Soto argues, the record shows these incidents were not raised until that letter.  Soto thus contends that the defendants' asserted reason for dismissing him, though nondiscriminatory, is not in fact the true explanation for his suspension and firing and was asserted only as a cover.

We find that the gaps in the defendants' account that Soto identifies raise a genuine issue of material fact concerning pretext.  For example, the record shows that complaints about Soto's conduct were never documented in writing or placed in Soto's personnel file.  And that was the case even though the District Court found that it was hotel policy to follow that course for lodging such complaints.  The record further indicates that, with respect to complaints about Soto, the hotel did not follow its acknowledged policy of "progressive discipline," in which verbal

warnings are followed by written ones.  Instead, Soto was suspended for two incidents of alleged insubordination and one alleged threat without first having been warned about those instances at all.

Of course, these last three incidents did occur in the days just prior to Soto's suspension.  And that timing may offer an explanation for the hotel's failure to document them formally.  But Soto points out that the complaints about his alleged insubordination and threatening comment were also not mentioned during the meeting he had with hotel management on February 28, 2010, even though that meeting post-dates these incidents, and even though Soto used the meeting to raise his concerns that the hotel was discriminating against him because of his age.

That meeting was attended by all of the hotel's senior staff, including all four Caro siblings (who together owned and operated the hotel).  Soto testified in his deposition that he explained to those assembled that, days earlier, on February 18, Sandra Caro had called him "old" and "slow" and that he felt discriminated against.  Soto also testified that he had said the same thing in a discussion with Fernando Caro (the general manager in charge of finance) on February 20.  And, finally, Soto testified that, at that same February 28 meeting with the Caro family, he informed the group that he had visited the Department of Labor concerning his employment at the hotel (though he does not assert whether he told the group that, while there, he visited the Anti-

Discrimination Unit, which handles age-discrimination complaints). Soto points out, however, that even though he had just directly confronted those at the meeting with his concerns that he was being discriminated against because of his age, those present made no reference during the meeting to the later-asserted, nondiscriminatory grounds for his dismissal.

On this record, we believe Soto has shown inconsistencies in the defendants' case sufficient to support an inference of pretext. See Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010) ("Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997))). In context, the hotel's failure to raise the incidents of alleged misconduct either through the established disciplinary processes or at the meeting on February 28 permits a jury to doubt the likelihood that the cited incidents truly were the basis for the decision to suspend and fire Soto. And that inference is made more plausible by Soto's testimony that the relevant decision maker had less than two weeks earlier told Soto that he was too old for his job, that she had heard as much from Soto's co-workers, and that she was

considering getting a new chef to replace him.  Further, the gaps in the defendants' account that Soto identifies must be considered against the additional testimony Soto gave that his direct supervisor in the kitchen, Héctor Pérez, had made similarly discriminatory comments repeatedly months before.

**3.**

Given the evidence in the record, Soto's defense against the motion for summary judgment does not "rest[] merely upon conclusory allegations, improbable inferences, and unsupported speculation."  Hodgens, 144 F.3d at 167 (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994)).  Instead, Soto has set forth a plausible competing account of the proper inference to draw about what transpired in the last two weeks of February 2010. Whether Soto's misconduct motivated the ultimate employment decision (as the defendants assert), or whether that misconduct took on significance only after the decision to terminate Soto on the basis of age had been made (as Soto contends), is not a question for us to decide at this stage of the case.  A rational jury could draw either inference, regardless of which may be the stronger of the two.  But we may not supplant the jury's role by weighing the strength of those competing inferences for ourselves. See Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing grant of summary judgment and noting that "determinations of motive and intent, particularly in

-21-

discrimination cases, are questions better suited for the jury" (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990))). We therefore reverse the District Court's decision granting summary judgment on Soto's age discrimination claim.

**IV.**

Soto also claims that the defendants suspended and fired him in retaliation for his efforts to redress the alleged age discrimination. That claim, too, states a cause of action under the Age Discrimination in Employment Act. See 29 U.S.C. §§ 623(a), (d). Because Soto's case for retaliation, like his one for discrimination, rests on indirect evidence of the defendants' impermissible motive, we follow the same framework that we used to assess Soto's age discrimination claim, "albeit with slight modifications" to account for the retaliation claim's distinct focus. Mesnick, 950 F.2d at 827.

**A.**

Under this modified framework, the first stage of the inquiry requires the plaintiff to "make a prima facie showing that (i) he engaged in ADEA-protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action." Id. In the retaliation context, too, the plaintiff's

burden at this initial stage is a lenient one. See Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014).

If the plaintiff makes a prima facie showing of impermissible retaliation, then, at the second stage, as in the discrimination context, the burden of production shifts to the defendant. To meet that burden, the defendant must offer a legitimate, non-retaliatory reason for the adverse employment action. Muñoz v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, 671 F.3d 49, 55 (1st Cir. 2012).

And if the defendant does offer such a reason, then the inquiry moves to the third and final stage. At this stage, "the plaintiff must assume the further burden of showing that the proffered reason is a pretext calculated to mask retaliation." Harrington v. Aggregate Indus.-Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012). To defeat summary judgment, however, a plaintiff need not prove retaliation by a preponderance of the evidence. A plaintiff bears only the lighter burden of showing that a genuine issue of material fact exists about whether retaliation was the true motive for the adverse employment action in question. See Mesnick, 950 F.2d at 828.

**B.**

We begin with Soto's prima facie showing of retaliation -- and, in particular, with the evidence that he puts forth that he engaged in conduct that the ADEA protects from retaliatory

measures. Soto relies on evidence that he engaged in two types of protected conduct: informal complaints to his employer about the age discrimination he claimed to suffer and more formal (though incomplete) steps to redress such discrimination.

Soto points in this regard to his testimony that, on February 20, 2010, he approached Fernando Caro (the hotel's general manager in charge of finance) to discuss the discriminatory remarks that Soto contends Sandra Caro made to him in their meeting two days before. Soto claims he told Fernando Caro that Sandra Caro had said Soto was "[too] old to work at the line" in the kitchen and that he considered her comments to be discriminatory. Soto also claimed he asked Fernando Caro for a meeting with hotel management to discuss these comments.

Next, Soto points to the fact that he went to the Puerto Rico Department of Labor five days after his February 20 discussion with Fernando Caro. During this February 25 visit, moreover, Soto went to the Department's Anti-Discrimination Unit in addition to another office, though he did not file any grievance with the Department.

Finally, Soto points to the comments he made at the February 28 meeting with the hotel's management team. Soto testified that, during that meeting, he narrated what had been said in his February 18 sit-down with Sandra Caro. He also testified that he explained to the whole group that he felt discriminated

-24-

against on the basis of her comments.  And, lastly, he testified that he told at least one of the members of the Caro family that he had visited the Department of Labor earlier that week.

Soto thus contends that, through the evidence of his complaints to hotel management and his visit to the Anti-Discrimination Unit at the Department of Labor, he has made a prima facie showing that he engaged in protected conduct.  And we agree. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 84 (1st Cir. 2006) (informal complaint to management may constitute protected conduct); Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998) (assuming that informal complaint to internal personnel department may constitute protected conduct); see also Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (acceptable forms of protected activity under Title VII's analogous clause include not only formal charges of discrimination, but also "informal protests of discriminatory employment practices, including making complaints to management").

With respect to Soto's prima facie case of retaliation, that leaves only whether Soto demonstrated a causal connection between his protected conduct and the adverse employment action that followed.  See Mesnick, 950 F.2d at 827.  The defendants contend Soto has not made that showing, and the District Court agreed.  But rather than address the defendants' arguments on this point in connection with the prima facie case, where Soto's burden

is lowest, see Garayalde-Rijos, 747 F.3d at 24, we move directly to see whether Soto has raised a genuine issue of material fact that the defendants' stated grounds for firing him were in fact a pretext for retaliatory animus. If he has met this showing, then he necessarily has met the lesser burden that he bears at the prima facie stage of showing a causal connection between his protected conduct and the decision to fire him. See Wells v. Colorado Dep't of Transp., 325 F.3d 1205, 1218 (10th Cir. 2003) (noting that, for retaliation claims, third element of prima facie case and third McDonnell Douglas stage are "not easily distinguishable" (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3rd Cir. 2000))).

## c.

Soto does not dispute that the defendants have articulated a legitimate, non-retaliatory reason for his suspension and termination. The reason is the same one that the defendants gave in response to Soto's prima facie showing of age discrimination: that Soto was insubordinate, made a threatening remark to another employee, and that his conduct was in other respects inappropriate. And so the issue comes down, once again, to pretext and the true motivation for Soto's suspension and firing. See Mesnick, 950 F.2d at 827 ("As in the discrimination context proper, courts confronted by summary judgment motions must at this [final stage] focus on the ultimate question": whether "the

-26-

employer's proffered reason is a pretext masking retaliation for the employee's opposition to a practice cast into doubt by the ADEA.").

We have already described, in connection with our evaluation of Soto's discrimination claim, certain gaps and inconsistencies in the evidence the defendants put forth regarding their concern about Soto's misconduct. We see no reason to reach a different conclusion about the potential weaknesses in that same evidence now that we are evaluating Soto's retaliation claim. We thus need not repeat our reasons for concluding that the incongruities in the defendants' account of their misconduct-based reasons for firing Soto could give rise to an inference of pretext.

That said, as with the claim of age discrimination, Soto must show more than that the defendants' asserted reason for taking adverse action against him was not the real reason. He must show that the reason given was a cover for retaliation, as it is retaliation that the ADEA forbids. See id. Mindful that Soto may make the required showing circumstantially, id. at 828, we look to see if Soto has raised a genuine issue of material fact about whether the defendants' claim that they fired Soto for his bad behavior was merely a cover for their retaliation against his efforts to redress their discrimination.

The District Court ruled that Soto did not put forth enough evidence. The District Court found that Soto had offered

nothing regarding the defendants' retaliatory motive beyond the fact that he had engaged in protected conduct soon before the defendants suspended and ultimately fired him.  The District Court then noted that while such temporal proximity may support an inference of retaliation, a coincidence of timing does not automatically do so.  And, further, the District Court concluded, such a timing-based inference would be unreasonable here because of the substantial evidence showing that the defendants had a legitimate reason to fire Soto that was completely unrelated to the steps Soto had taken to redress the alleged age discrimination.

In our view, however, Soto's evidence of retaliatory motive, while not as strong as his evidence of discriminatory motive, rests on more than temporal proximity alone.  Soto points out that he directly informed hotel management of his concerns about age discrimination on a number of occasions in the days prior to his suspension.  And thus Soto argues not only that there was a temporal connection between his independent actions to protect his rights and the suspension and firing that followed, but also that the defendants knew that he had taken such steps and were concerned that he had done so.

Specifically, Soto points to the evidence concerning his conversation with Fernando Caro on February 20, in which he raised his concerns about age discrimination, and his meeting with a number of members of the Caro family on February 28, in which he

raised those concerns again. With respect to the visit to the Department of Labor on February 25, Soto notes (and the District Court acknowledged) that he informed Luis López (a fellow co-worker) and Evelyn Caro (the hotel's human resource supervisor) that he had gone to the Department of Labor "to seek orientation about his rights as an employee." In addition, Soto testified that he informed Rita Caro, who signed the March 2 letter informing him of his suspension, that he had gone to the Department "to ask for counseling."

Moreover, Soto notes that the record contains evidence showing that Rita Caro (who was in charge of customer services at the hotel and was one of co-signers of the March 2 suspension letter) had specifically asked Soto why he had visited the Department of Labor. And Soto emphasizes that Rita Caro asked him that question only days before informing him of his suspension for allegedly non-age-related reasons.

True, Soto was at best equivocal about whether he told anyone in hotel management that he had gone to the Anti-Discrimination Unit during his visit to the Department of Labor. But the record certainly permits the inference that the defendants -- who suspended Soto just two days after he informed those assembled of his visit -- believed Soto had gone to the Department to address his by then well-known concerns about the hotel's age discrimination.

-29-

In this regard, Soto's contention that the hotel manager who signed the March 2 suspension letter had inquired about Soto's visit to the Department of Labor takes on particular significance. For on Soto's account, it is no mere coincidence that she made that inquiry at a time when she knew Soto was concerned about age discrimination -- and just days before she took action to sever Soto's ties to the hotel in a letter that was careful to set forth misconduct as the basis for his suspension. Instead, on Soto's view, that inquiry is reflective of the hotel management's concern with his efforts to take action against the hotel's alleged discrimination.

We thus find that the record gives rise to competing plausible inferences from which a rational jury could find for Soto. According to Soto, the defendants' true concerns about his continued employment were not based on the incidents involving his alleged misconduct -- none of which was formally documented or even raised directly with Soto in accord with the hotel's recognized disciplinary process -- but rather were based on his increasingly assertive efforts to address the hotel's discrimination. And, for that reason, we must reverse the District Court's summary judgment order on Soto's retaliation claim.

## V.

After granting summary judgment for the defendants on both the federal age discrimination and retaliation claims, the

-30-

District Court dismissed without prejudice all of Soto's Puerto Rico law claims.  Because we conclude the District Court erred in granting summary judgment on the federal claims, we vacate the dismissal of the pendent state law claims and remand them for further consideration.

## VI.

In concluding that the District Court gave insufficient consideration to Soto's side of the story, we do not mean to suggest that a discriminatory or retaliatory motive in fact underlay the defendants' decision to suspend and then fire Soto. We hold only that there is a triable issue of fact as to whether the defendants' stated grounds for taking adverse employment actions against Soto were in fact a pretext for the discrimination and retaliation the ADEA bars.  The District Court's judgment is therefore vacated.  We remand for further proceedings.  No costs are awarded.