# United States Court of Appeals
## For the First Circuit

---

No. 14-1912

PETER SANTANGELO,

Plaintiff, Appellant,

v.

NEW YORK LIFE INSURANCE COMPANY,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Thompson and Barron, Circuit Judges.

---

Paula M. Minichiello, with whom Christopher G. Fallon and Law
Office of Christopher G. Fallon, PC were on brief, for appellant.
Jessica Unwin Farrelly, with whom William E. Hannum III and
Schwartz Hannum PC were on brief, for appellee.

---

April 6, 2015

---

**BARRON, Circuit Judge.** The appellant was a life insurance agent with the New York Life Insurance Company for more than forty years before his termination. He now contends that he was an "employee" of New York Life and that in firing him New York Life engaged in age discrimination in violation of both state and federal law. He also argues that New York Life wrongfully refused to pay him a particular form of retirement compensation. The District Court granted summary judgment for New York Life on all of these claims, and we affirm.

**I.**

Peter Santangelo started as a life insurance agent with New York Life in the late 1960s.[1] His difficulties with that company started in July of 2006. That was when New York Life "Standards Consultant" John Quarella, Jr., conducted an audit of Santangelo's files. The audit turned up two forms (a dividend withdrawal form and a life insurance application) related to New York Life insurance policies that Santangelo's customers had signed before the forms were completed. A New York Life rule prohibited agents from obtaining and retaining such incomplete signed forms. The concern, presumably, was that an agent would later complete the signed form and use it to make changes that the customer had not

---

[1] We recite the relevant facts in the light most favorable to Santangelo, the non-moving party. See Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 22 (1st Cir. 2015).

authorized.  As a result of the audit, New York Life gave Santangelo a "Letter of Reprimand" in September of 2006.

One year later, in September of 2007, Quarella conducted another audit of Santangelo's files.  The audit turned up three more incomplete forms signed by customers (a dividend withdrawal form, an annuity application, and a beneficiary form).  New York Life then gave Santangelo a "Letter of Severe Reprimand" in March of 2008.  In April of that year, New York Life also placed Santangelo on "Enhanced Supervision," a status that subjected his files to more frequent audits.  During one such audit, in December of 2008, Quarella found two more incomplete forms signed by Santangelo's customers in Santangelo's files (an annuity application and an "agreement to exchange" form).

After that December 2008 audit, Quarella and Santangelo met with James A. Robertson III, a higher-level "Standards Consultant" at New York Life.  They discussed Santangelo's repeated violations.  Following that meeting, Robertson recommended terminating Santangelo's agent contract.

On April 1, 2009, Santangelo received a letter from New York Life's human resources department that referred to his "upcoming retirement on May 1, 2009."  Confused, Santangelo contacted New York Life's human resources department the next day, April 2.  In response, Santangelo received a letter by fax from a Senior Vice President of New York Life stating that Santangelo's

agent contract would be terminated effective May 1, 2009.  On April 7, Santangelo was denied access to the office space he rented in a New York Life building and disconnected from New York Life's computer network, notwithstanding the termination letter's stated effective date.

Santangelo fought his termination on several fronts. First, in December of 2009, he filed a "Charge of Discrimination" with the Massachusetts Commission Against Discrimination ("MCAD"). Santangelo contended that New York Life terminated him because of his age, in violation of both the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and Massachusetts General Laws Chapter 151B, which likewise prohibits age discrimination.  In February of 2012, MCAD found no probable cause to support further investigation of Santangelo's charge.  Then, in May of 2013, MCAD denied Santangelo's administrative appeal of that finding.  Five months later, on October 31, 2013, the federal Equal Employment Opportunity Commission ("EEOC") "adopted the findings of" MCAD and closed its file on Santangelo's charge.[2]

Separately, in March of 2012, Santangelo -- represented by counsel -- filed suit against New York Life in Massachusetts

_____

[2]     Under a "worksharing agreement" between the federal Commission and the Massachusetts Commission, charges filed with either commission "are effectively filed with both agencies," and "the EEOC affords the findings of the MCAD 'substantial weight.'" Davis v. Lucent Techs., Inc., 251 F.3d 227, 230 n.1 (1st Cir. 2001) (quoting 29 C.F.R. § 1601.21(e)).

state court.  This lawsuit alleged several common-law claims: breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and quantum meruit.  New York Life removed that suit to the U.S. District Court for the District of Massachusetts on diversity-of-citizenship grounds in July of 2012, and moved for summary judgment in October of 2013.

In January of 2014, while that summary judgment motion was pending, Santangelo -- acting pro se -- filed a new suit against New York Life in the U.S. District Court for the District of Massachusetts.  This suit alleged only age discrimination, under both Massachusetts Chapter 151B and the federal ADEA.  After Santangelo's counsel agreed to represent him in that suit as well, the District Court consolidated the two cases.  New York Life then moved for summary judgment on all the claims in the two consolidated cases, and the District Court granted that motion. See Santangelo v. N.Y. Life Ins. Co., No. 12-11295-NMG, 2014 WL 3896323 (D. Mass. Aug. 7, 2014).  Santangelo now appeals from that judgment.

## II.

We review the District Court's grant of summary judgment de novo.  Cracchiolo v. E. Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014).  "We may affirm such an order on any ground revealed by the record."  Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d

178, 184 (1st Cir. 1999). In our review, we "consider[] the record and all reasonable inferences therefrom in the light most favorable to the non-moving part[y]." Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010). We may decide in favor of the moving party -- here, New York Life -- "only if the record reveals 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

## III.

We start with Santangelo's age discrimination claims under Massachusetts Chapter 151B and the federal ADEA. Although the statutes are similar, they are not identical. See Diaz v. Jiten Hotel Mgmt., Inc., 671 F.3d 78, 82 (1st Cir. 2012). The District Court granted summary judgment to New York Life on both claims. The District Court concluded that the undisputed facts showed that Santangelo was an independent contractor and not an employee of New York Life, and that each statute only protects "employees." But even assuming that Santangelo was an employee, his age discrimination claims still fail. And that is because his state law claim is time-barred, and his federal law claim lacks any factual showing of age discrimination.

## A.

Massachusetts law required Santangelo to file suit on his state law age discrimination claim "not later than three years

after the alleged unlawful practice occurred." Mass. Gen. Laws ch. 151B, § 9. Santangelo did not file suit on that claim until January of 2014, nearly five years after the termination of his contract with New York Life. Santangelo points out that the statute of limitations did not begin to run against him until he knew or should have known that he had been "harmed by the defendant's conduct." Silvestris v. Tantasqua Reg'l Sch. Dist., 847 N.E.2d 328, 336 (Mass. 2006). And Santangelo contends that he did not have that kind of triggering knowledge until February 14, 2012, when MCAD issued a decision denying his administrative age discrimination charge.

But Santangelo filed a charge of age discrimination in violation of Chapter 151B with MCAD on December 15, 2009, well over three years before he filed suit on his state discrimination claim in 2014. Santangelo does not explain how it could be that he had enough information to file that administrative age discrimination charge with MCAD, but not enough information to trigger the statute of limitations on the Chapter 151B claim. Nor does Santangelo explain why he could not have filed a claim prior to MCAD's February 2012 denial of his age discrimination charge, as he does not identify any information that the denial provided him that he would have needed to make such a filing. Santangelo's Chapter 151B claim is thus time-barred.

**B.**

That leaves Santangelo's federal ADEA claim.[3] We address that claim under "the familiar three-step framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015). Here, we may assume that Santangelo made the required "prima facie case of employment discrimination" to get past the first step.[4] Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009). There also is no question that New York Life, at the second step, did what was required of it. New York Life responded to Santangelo's claim with the required "legitimate, nondiscriminatory reason" for terminating Santangelo -- his repeated violations of New York Life's rule against maintaining incomplete forms signed by customers. In fact, Santangelo does not dispute that he repeatedly violated that rule. He also does not

---

[3] This claim is timely. The ADEA's ninety-day statute of limitations did not begin to run until the EEOC denied Santangelo's administrative claim on October 31, 2013, and he filed suit within ninety days thereafter. See 29 U.S.C. § 626(e). New York Life does contend that Santangelo's ADEA claim is barred by laches, because Santangelo unreasonably delayed bringing it, to New York Life's detriment. We need not resolve this contention, as we conclude that Santangelo's ADEA claim fails on the merits.

[4] "In the context of an ADEA claim for discriminatory firing, this requires a plaintiff to show that: 1) he was at least 40 years old at the time he was fired; 2) he was qualified for the position he had held; 3) he was fired, and 4) the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services." Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009).

dispute the documentary evidence that shows New York Life took a series of escalating disciplinary actions in response to those violations.

That brings us to the third step of the McDonnell Douglas framework. At this step, the burden is on Santangelo to show that New York Life's asserted reason for terminating him was a pretext for terminating him because of his age. See Vélez, 585 F.3d at 447-48. To meet that burden, "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)).

Santangelo does point to facts in the record that he contends cast doubt on whether his violations of New York Life's incomplete-forms rule were the reason for his termination.[5] But even accepting that, Santangelo offers no evidence that could lead a rational jury to conclude that "he was fired because of his age." Soto-Feliciano, 779 F.3d at 25 (quoting Vélez, 585 F.3d at 452). Nothing in the record shows, or even suggests, that New York Life

_____

[5] For example, Santangelo testified that he was not told that his violations were the reason for his termination until eight months after he was terminated.

considered Santangelo's age in firing him. None of the contemporaneous materials concerning the disciplinary actions New York Life took against Santangelo, including the termination, mentions Santangelo's age. Nor does Santangelo offer evidence (or even allege) that his age ever came up during the disciplinary or termination process.

Santangelo does allege that New York Life "hired hundreds of younger agents with less experience than him." He offers no evidence, however, that any of those agents were hired to replace him specifically. Similarly, Santangelo does argue -- based on his own affidavit and his own deposition testimony -- that he was "singled out and treated differently than his peers," because "it was common for agents to have on file signed blank or partially completed forms." But Santangelo offers no evidence that these allegedly differently treated "peers" were younger than him, and thus no reason for concluding that this bare assertion constitutes evidence that New York Life terminated him because of his age.

The result is that Santangelo's claim of age discrimination rests only on "conclusory allegations, improbable inferences, and unsupported speculation." Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998) (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994)). And because no rational jury could conclude on this record that New York Life's stated reason for terminating Santangelo -- his repeated violations

of a New York Life rule -- was a pretext for age discrimination, we affirm the District Court's grant of summary judgment to New York Life.

## IV.

That leaves only Santangelo's common-law claims under Massachusetts law. In each, Santangelo contends that New York Life wrongfully deprived him of a retirement benefit called "Supplemental Senior Nylic Income," or "SSNI."

What unites these claims, in broad strokes, is the following. If Santangelo retired voluntarily, he could have chosen to remain affiliated with New York Life under what is called an "active Retired Agent's Contract." Under that type of contract, Santangelo would have been entitled to continue to sell New York Life insurance products. And, as a result, he would also have been eligible for SSNI payments. But as a consequence of his termination, Santangelo cannot select an "active Retired Agent's contract." Rather, his status is that of an "inactive Retired Agent." And someone with that status is not eligible for SSNI payments. Santangelo thus contends in each claim that he has been wrongfully deprived of SSNI payments, even though he does not have an "active Retired Agent's" contract.

Santangelo's first common-law claim is for breach of contract. The District Court held that New York Life did not breach its contract with Santangelo because New York Life's

-11-

termination of Santangelo's agent contract meant that Santangelo had no contractual right to SSNI payments.  Santangelo does not challenge that holding on appeal.  Instead, Santangelo now contends that New York Life's termination of his agent contract was itself a breach of contract because New York Life fired him in violation of state and federal laws barring age discrimination in employment. But "[t]his argument is raised for the first time on appeal without citation to any pertinent authority, so it is both inadequately presented and waived."  P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 58 n.5 (1st Cir. 2012).

Santangelo's next common-law claim -- for breach of the implied covenant of good faith and fair dealing -- also fails at the summary judgment stage.  Massachusetts law provides that "[e]very contract implies good faith and fair dealing between the parties to it."  Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991) (quoting Warner Ins. Co. v. Comm'r of Ins., 548 N.E.2d 188, 193 n.9 (Mass. 1990)).  Under that implied duty, neither party may "do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Id. (quoting Drucker v. Roland Wm. Jutras Assocs., 348 N.E.2d 763, 765 (Mass. 1976)).  It is therefore a breach of the implied duty for a party to exercise its own contractual right as a "tool engineered to serve th[e] illicit purpose" of undermining his counterparty's contractual rights.  Id.

-12-

at 820-21 (alteration in original) (quoting N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 471 (1st Cir. 1988)).

In an effort to show that New York Life breached this duty -- and thus that he should be able to affiliate with New York Life as an active Retired Agent and receive SSNI payments -- Santangelo asserts that New York Life terminated his contract in bad faith because it fired him in order to avoid paying him SSNI payments. But Santangelo offers no evidentiary support for that claim.

Nothing in the record suggests that New York Life so much as considered SSNI payments in making its termination decision. The District Court did find that New York Life was "clumsy" or "incompetent" in informing Santangelo of his termination. New York Life at points referred to his "retirement" and gave an effective date for his termination different from the date on which he was actually terminated, locked out of his office, and disconnected from the company's computer network. But we agree with the District Court that this evidence does not supply a rational jury with a basis for finding that New York Life fired him for the purpose of denying him SSNI payments.[6] And without some such

_____

[6] Santangelo argues that New York Life's purpose in locking him out and disconnecting his computer was to prevent him from electing the "active Retired Agent's contract" that would have entitled him to SSNI payments. Thus, he seems to contend, the lockout and disconnection show that New York Life had the purpose of denying him those payments. But as the District Court explained, "[e]ven if [Santangelo] had access to his computer

-13-

evidence of that illicit motive,[7] Santangelo cannot survive summary judgment on his claim for breach of the implied duty of good faith.

Santangelo's third common-law claim is for "promissory estoppel." Massachusetts law recognizes the doctrine, although it "do[es] not use the expression 'promissory estoppel'" to describe it. R.I. Hosp. Trust Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1179 (Mass. 1995) (quoting Loranger Constr. Corp. v. E. F. Hauserman Co., 384 N.E.2d 176, 179 (Mass. 1978)). For the doctrine to apply, the defendant must have made a promise that the defendant would "reasonably expect to induce action or forbearance" by the plaintiff, and the plaintiff must in fact have relied on that promise. Id. at 1178-79 (quoting Restatement (Second) of Contracts § 89B(2) & illus. 6 (Tent. drafts Nos. 1-7, 1973)).

Here, Santangelo contends that New York Life promised him that he would receive SSNI payments if he completed thirty years of service, that New York Life should have expected him to rely on that promise, and that he in fact relied on that promise. But Santangelo nowhere contends that he was promised he would be

_____

during that entire period, he would not have been eligible to elect such a contract" because he was being terminated. Santangelo does not argue otherwise. The lockout and disconnection do not provide evidence from which a rational jury could find that New York Life acted with the purpose of denying Santangelo SSNI payments.

[7] To the extent Santangelo now seeks to use his allegations of age discrimination to support a showing of bad faith, that argument is waived for both failure to present it below and failure to cite any pertinent authority. See P.R. Tel. Co., 678 F.3d at 58 n.5.

-14-

eligible for the SSNI payments even if he was terminated prior to retirement. Nor does Santangelo contend that he was told that the SSNI booklet, which contained the written terms of the SSNI program, would not apply to him. In fact, Santangelo concedes that the SSNI booklet "set forth . . . the prerequisites for SSNI." And that is crucial, because the SSNI booklet provided that Santangelo would be eligible to get SSNI payments only if he was able to "continue to operate for [New York Life] under a Retired Agent's Contract." In other words, Santangelo provides no evidence that New York Life promised that he would be eligible for the SSNI payments even if he was barred from continuing to operate under an "active Retired Agent's Contract." Santangelo thus has not shown that there is a genuine issue of triable fact about a breach of any promise regarding SSNI payments on which he could reasonably have relied.

That leaves Santangelo's unjust enrichment and quantum meruit claims. Santangelo alleges them separately, but as a matter of Massachusetts law, unjust enrichment and quantum meruit are the same "theory of recovery." See J.A. Sullivan Corp. v. Commonwealth, 494 N.E.2d 374, 377 (Mass. 1986) ("In a case involving an unenforceable contract, we allowed quantum meruit recovery, basing our reasoning on the theory of unjust enrichment."). Quantum meruit is a theory allowing recovery where

-15-

the defendant has been unjustly enriched at the expense of the plaintiff. See Liss v. Studeny, 879 N.E.2d 676, 682 (Mass. 2008).

Here, as we have said, the SSNI booklet imposed a requirement that Santangelo elect an active Retired Agent's contract in order to receive SSNI payments. But as a consequence of the termination -- which, as explained above, Santangelo cannot show breached his agent's contract -- Santangelo could not elect the required contract type. "A plaintiff is not entitled to recovery on a theory of quantum meruit where there is a valid contract that defines the obligations of the parties." Bos. Med. Ctr. Corp. v. Sec'y of Exec. Office of Health & Human Servs., 974 N.E.2d 1114, 1132 (Mass. 2012). To require New York Life to make SSNI payments when the preconditions expressly set forth for obtaining the SSNI payments were not met "would, therefore, run counter to the reasonable expectations of the parties." Liss, 879 N.E.2d at 682. And so as to this claim, too, Santangelo has failed to provide evidence that survives New York Life's summary judgment motion.

## V.

Given the undisputed evidence in this case, Santangelo's state law age discrimination claims were time-barred, and no reasonable jury could conclude that New York Life engaged in age discrimination under federal law in terminating his agent contract. Nor could a reasonable jury conclude that the termination breached

Santangelo's contract with New York Life or violated any of his common law rights.  For those reasons, we <u>affirm</u> the judgment of the District Court.