# United States Court of Appeals
## For the First Circuit

No. 18-2115

JOYCE PAUL,

Plaintiff, Appellant,

v.

EMILY W. MURPHY,
Administrator, General Services Administration,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Selya, and Barron,
Circuit Judges.

Ana Muñoz, with whom Zalkind Duncan & Bernstein LLP was on brief, for appellant.
Erin Brizius, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellee.

January 24, 2020

**BARRON**, **Circuit Judge**.  This appeal concerns a federal sex and age discrimination suit against the Administrator of the United States General Services Administration ("GSA") by a former employee of that agency.  The District Court granted summary judgment to the defendant on each of the former employee's claims.  We affirm.

## I.

The former employee is Joyce Paul.  She was employed as a Contract Specialist with the GSA from 2000 until she retired in February of 2009 at the age of sixty-five.[1]  Her suit against the Administrator may be traced to actions that were taken by Ivan Lopez, who, in April of 2006, became her supervisor at the GSA and began overseeing her work and conducting her performance reviews.[2]

---

[1] "We recite the relevant facts in the light most favorable to [Paul], the non-moving party."  Santangelo v. N.Y. Life Ins. Co., 785 F.3d 65, 67 n.1 (1st Cir. 2015).

[2] On appeal, Paul asserts that Lopez became her supervisor in April of 2007, but she points to no evidence in the record to support this contention.  The District Court found that Lopez became Paul's supervisor in April of 2006, and the record evidence shows that Lopez began conducting Paul's performance reviews as her supervisor in 2006.  Under the Local Rules of the United States District Court for the District of Massachusetts, Paul was deemed to have admitted any material facts on which the defendant said there was no genuine issue to be tried if she did not set them forth in her own motion in opposition to summary judgment.  See D. Mass. R. 56.1.  The defendant's Rule 56.1 motion included the April 2006 date as an undisputed fact, and the plaintiff wrote that she "agree[d]" with the defendant on this point.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (explaining that a plaintiff's failure to contest a fact in the Rule 56.1 statement caused that fact to be admitted).

GSA supervisors are required to conduct, at a minimum, a midyear and an annual performance review. Performance reviews are based on a ranking between Level 1 and Level 5 (with 5 being the highest) for individual critical elements, such as communication, teamwork, and customer relationship management. Those rankings are used to determine the employee's summary ranking (also between Level 1 and 5).

A Level 3 summary ranking is the expected level of performance. An employee cannot receive a summary ranking above Level 2 if the employee receives a Level 2 ranking or lower for any individual critical element.

If an employee receives a summary ranking of Level 2, GSA policies strongly suggest that the employee's supervisor should develop a corrective action plan. Further, under GSA policies, employees who receive a Level 2 summary ranking are no longer eligible for telework arrangements, within-grade pay increases, promotions, or organizational performance awards.

Before Lopez began conducting Paul's performance reviews, she received a Level 3 summary ranking on her midyear 2005 performance review. Once Lopez began conducting Paul's performance reviews, she received a Level 3 summary ranking for

her 2006 and 2007 annual performance reviews.[3]  Subsequently, however, Lopez gave her a Level 2 summary ranking on her 2008 midyear review.

Following that ranking, Lopez developed a Performance Assistance Plan ("PAP") for Paul in August of that year.  The PAP required Paul to meet weekly with Lopez to discuss her work and prohibited Paul from teleworking until her performance improved.[4]

Two months later, in October of 2008, Paul received an Official Warning Notice from Lopez after she raised her voice during one of her weekly PAP meetings with him.  Paul thereafter received a Level 2 summary ranking for her 2008 annual performance review.  Lopez developed another PAP for Paul in January of 2009.  That PAP also required her to meet with him weekly and prohibited her from teleworking.  Paul retired about one month later, in February of 2009.

On January 15, 2009, Paul filed a formal complaint with the United States Equal Employment Opportunity Commission ("EEOC").  She alleged discrimination by Lopez and the GSA based on sex, age, and religion.  She also alleged that she had been retaliated against for earlier EEOC activity.

---

[3] The record shows that Lopez also conducted Paul's midyear performance review in May of 2007.  The copy of the review in the record does not include a numerical ranking of Paul's performance.

[4] Lopez had previously reduced the number of Paul's telework days from four per two-week period to three.

Following the administrative complaint process, Paul filed a pro se complaint in the United States District Court for the District of Massachusetts in September of 2011 against GSA Administrator Martha Johnson.[5] The complaint alleged a number of claims for sex and age discrimination, including for constructive discharge. The complaint also alleged claims for retaliation based on attempts to redress such discrimination. The claims were, presumably, based on, respectively, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII"), which bars sex discrimination in employment and retaliation by an employer for an employee's attempt to redress it, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., ("ADEA"), which bars age discrimination in employment and an employer's retaliation for an employee's attempt to redress it. Paul's complaint did not, however, expressly refer to either of those statutes.

The District Court referred the case to a Magistrate Judge. The defendant followed with a motion for summary judgment on all claims, and the Magistrate Judge issued a Report and Recommendation ("R&R") that recommended granting that motion. Paul filed no objections to the R&R, and the District Court adopted

---

[5] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Administrator Emily W. Murphy has been substituted for former Administrator Martha Johnson as respondent.

it.  The District Court then granted summary judgment for the defendant as to all claims in September of 2013.

At that point, however, Paul moved for relief from the judgment.  She did so on the ground that she had not received the R&R and so had no opportunity to respond to it.  The District Court granted Paul's request.  Paul then filed objections to the R&R.  On September 11, 2018, the District Court once again adopted the R&R and granted the defendant's motion for summary judgment as to all her claims, including those in which she alleged that she had been constructively discharged.  This appeal followed.[6]

## II.

We start with Paul's sex discrimination claims under Title VII.  We then consider her age discrimination claims under the ADEA.  Finally, we consider the retaliation claims that she brings under both statutes.  We review the District Court's grant of summary judgment de novo.  Santangelo v. N.Y. Life Ins. Co., 785 F.3d 65, 68 (1st Cir. 2015).  We may affirm a grant of summary judgment "on any ground revealed by the record."  Id. (quoting Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st

---

[6] Paul does not challenge on appeal the District Court's grant of summary judgment to the defendant on either her hostile work environment claim of sex discrimination under Title VII or her religious discrimination claims under that statute.  Nor does she challenge on appeal the District Court's grant of summary judgment to the defendant on her hostile work environment claim under the ADEA.

- 6 -

Cir. 1999)). The moving party is entitled to summary judgment when the record, viewed in the light most favorable to the non-moving party, "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the moving party is entitled to a judgment as a matter of law.'" Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). The non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Id.

**A.**

The District Court treated Paul's claims for sex discrimination as arising under Title VII, and we follow the District Court in analyzing them under the burden-shifting framework that the United States Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[7] Under that framework, the plaintiff, to survive summary judgment, must put forth evidence from which a reasonable juror could find that she had established a prima facie case of discrimination under Title VII -- namely, "that: (1) she belonged to a protected class,

---

[7] The District Court also followed the Magistrate Judge in treating Paul's Title VII claims as if they had been brought under 42 U.S.C. § 2000e-2(a) in particular, and neither Paul nor the defendant challenges that treatment of her claims on appeal, although we note that Title VII includes a separate provision that applies to claims against federal government employers. See 42 U.S.C. § 2000e-16. We thus do not address this issue further.

(2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person." Bonilla-Ramirez v. MVM, Inc., 904 F.3d 88, 94 (1st Cir. 2018) (quoting Burns v. Johnson, 829 F.3d 1, 9 n.8 (1st Cir. 2016)). If the plaintiff succeeds in doing so, "[t]he burden of production then 'shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action.'" Burns, 829 F.3d at 9 n.8 (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000)).

If the defendant articulates such a reason, "then the plaintiff bears the ultimate burden of proof to show that the employer's proffered nondiscriminatory reason for the adverse employment action was a pretext and that the employer did intentionally discriminate against her because of her sex." Bonilla-Ramirez, 904 F.3d at 94. Accordingly, to survive summary judgment in the face of a defendant having articulated a legitimate, nondiscriminatory reason for its alleged adverse employment action, the plaintiff must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." Ray v. Ropes & Gray LLP, 799 F.3d 99, 113 (1st Cir. 2015) (quoting Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006)). That is, she "must

- 8 -

produce sufficient evidence to create a genuine issue of fact as to two points: 1) the employer's articulated reasons for its adverse actions were pretextual, and 2) the real reason for the employer's actions was discriminatory animus." Id. (quoting Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007)). "[M]erely . . . impugn[ing] the veracity of the employer's justification" is insufficient. Id. (quoting Azimi, 456 F.3d at 246).

The District Court found, and the parties agree, that Paul has established a prima facie case of sex discrimination. In addition, the District Court determined that the defendant had set forth a legitimate, nondiscriminatory reason for the adverse employment actions that Paul alleges that it took against her -- namely, that her supervisor had determined that her performance merited them. The District Court further found that Paul had failed to identify evidence in the record from which a reasonable juror could find that she had shown that reason to have been a pretext for sex discrimination.

Because Paul has failed to show that a jury could make such a finding as to pretext, we begin and end our analysis by focusing on that issue. In doing so, we consider each of the grounds that Paul asserts require us to reach a different conclusion.

- 9 -

Paul argues first that an unexplained "sharp drop" in a plaintiff's performance review scores can give rise to the inference that an employer's reliance on them to take an adverse employment action was a pretext for discrimination, Thomas v. Eastman Kodak Co., 183 F.3d 38, 42-45, 62-63 (1st Cir. 1999), and that the evidence supportably shows that there was such a sharp drop in her performance review rankings once Lopez became her supervisor.  We do not agree.

The undisputed record shows that, for one critical element (data integrity), Paul actually received a higher ranking from Lopez than she had from her former supervisor.  And while that critical element was later removed from Paul's performance review, at which point her ranking dropped on the critical element that replaced it,  the fact remains that the replacement element was new and thus the ranking that she received on it did not represent a "drop" -- let alone a "sharp" one -- from any prior ranking that she had received on it.

Paul is right that her ranking fell from a Level 4 on her midyear 2005 review for one critical element -- customer relationship management[8] -- to a Level 3 on her 2006 and 2007 annual reviews, to a Level 2 on her midyear 2008 review. But,

_____

[8] The 2005 review identifies the critical element as customer relations.  We assume, to Paul's benefit, that customer relations and customer relationship management are the same or similar critical elements.

- 10 -

evidence of that stepwise decline in her rankings on that element over some of the years during which Lopez supervised her supplies no basis for a finding that there had been a "sharp drop" from the rankings that she had received from her prior supervisor. Nor was the Level 2 ranking that Lopez gave her on customer relationship management in 2008 unexplained. Among other comments, Lopez wrote that Paul "[did] not consistently respond to customer inquiries in a timely fashion and [did] not always follow-up with customers to ensure their needs are met," and Paul does not point to any evidence in the record that supportably casts doubt on that explanation.

Paul next focuses on the written performance reviews that she received from Lopez. She is right that a "stark" change in assessments of a plaintiff by a new supervisor, who provides a negative assessment of the plaintiff that the prior supervisor "categorized as an 'excellent employee' and 'extraordinary,'" and from whom the plaintiff had "received exemplary performance evaluations" and "numerous accolades," can ground a finding of pretext. Burns, 829 F.3d at 15.

Keying off that precedent, Paul points to comments from her former supervisor that noted her work on the "contract documentation for the most innovative, and difficult . . . contract" and commented on her "willingness to be a team player and perform[] her work with enthusiasm and dedication to the

mission."  She argues that Lopez's written assessment that Paul lacked "journeyman level knowledge" -- a phrase that he used in her performance review in reference to her not demonstrating knowledge "of the documentation needed for new contracts or for the modifications to existing contracts" and "of appropriate technical tools such as Excel, PowerPoint, etc." -- directly contradicts this prior assessment.  She thus contends that the difference supports the inference that the claimed performance-based reason for subjecting her to adverse employment actions was pretextual.

But, the undisputed record shows that GSA employees are assessed, in part, for "keep[ing] current on procurement regulations."  In light of that context, the claimed discrepancy between the written assessments from Lopez and the supervisor that he succeeded does not amount to the kind of "stark" difference in assessments by old and new supervisors that would support an inference that Lopez's more critical assessment of her work was a pretext for discrimination based on her sex.

Paul next invokes precedent that indicates that a "sudden emergence" of problems with her performance under a new supervisor may ground a finding of pretext.  See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002).  She contends that the record reveals that, before Lopez became her

supervisor, there was a lack of documented problems in her work performance.

The record clearly shows, however, that, once Lopez became Paul's supervisor, there was only a modest decline in Paul's reviews and rankings over a period of three years between her last performance review with her former supervisor that is included in the record from May of 2005, on which she received a Level 3 summary ranking, and her first Level 2 summary ranking from Lopez in October of 2008.[9]  Thus, we are not persuaded by this aspect of her challenge to the grant of summary judgment.

We come, then, to Paul's assertion that the record supportably shows that the lower rankings that Lopez gave to her were based on the mistakes of others.  But, this contention lacks merit because there is no indication in the record that Lopez did not believe that Paul was responsible for the mistakes at issue. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823-24 (1st Cir. 1991) (explaining that the question is "whether the employer believed its stated reason to be credible" (quoting Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986))); Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42, 45 (1st Cir. 2005) (stating that the plaintiff must show that her termination

---

[9] The record indicates that Paul's former supervisor also conducted Paul's midyear 2006 performance review in May of that year, but that review is not included in the record.

- 13 -

was something more than an "unusual act" or a "business error," and that "pretext means deceit used to cover one's tracks" (internal quotations omitted)).

Paul also argues that the record supports a finding that Lopez told her to "toughen up" one time after she cried during one of her weekly meetings with him and that, subsequently, when she was assertive, she received an Official Warning Notice for raising her voice in a meeting. She points out that evidence that an employee was subjected to a double standard on the basis of sex-based stereotypes can supply evidence of pretext. See Burns, 829 F.3d at 13 ("As this circuit has repeatedly held, stereotyping, cognitive bias, and certain other 'more subtle cognitive phenomena which can skew perceptions and judgments' also fall within the ambit of Title VII's prohibition on sex discrimination." (quoting Thomas, 183 F.3d at 61)). But, an employer who requires an employee to engage with others in the workplace in a professional manner does not, in doing so, engage in conduct that supports an inference of discrimination. See Hux v. City of Newport News, 451 F.3d 311, 318 (4th Cir. 2006) (finding no pretext when the "plaintiff . . . experienced problems acting professionally at work" because there is "nothing in Title VII to indicate that Congress wished to require companies to disregard the successful personal interactions that make for a productive workplace"). Paul fails to identify evidence in the record that would support a finding of

- 14 -

the former sort, as she does not dispute that she regularly cried in meetings or that she received the Official Warning Notice after shouting so loudly in a meeting that employees sitting two cubicle rows away outside the closed door could hear her clearly and that she declined to lower her voice after being asked.

Finally, Paul argues that the record suffices to permit a reasonable juror to find that others in the office lacked knowledge of contracting procedures but did not receive similarly low marks on performance reviews and that men were not punished for unprofessional behavior and were chosen for promotions to "acting" positions even though she had more seniority. There is no evidence in the record, however, to support a finding that her co-workers made similar mistakes to those that the undisputed record reveals that Lopez believed that Paul made.

Nor is there any evidence to support a finding that those co-workers, or the men who allegedly received different treatment, were "similarly situated 'in all relevant aspects,'" e.g., "in terms of performance, qualifications and conduct, 'without [] differentiating or mitigating circumstances that would distinguish' their situations." Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995) (emphasis omitted) (quoting Smith v. Stratus Comput., Inc., 40 F.3d 11, 17 (1st Cir. 1994)) (affirming summary judgment). For example, the record does not show that Lopez supervised and evaluated these co-workers. In fact, the record

shows that other female employees that he supervised received Level 4 and Level 5 ratings in 2008, which is the same year that Paul received a Level 2 rating, and that another female employee did receive permission to telework.[10]

For these reasons, Paul has failed to meet her burden to show that there is a genuine issue of material disputed fact as to whether the defendant's asserted nondiscriminatory reason for taking the adverse actions that it did was pretextual. In consequence, the District Court did not err in granting summary judgment to the defendant on Paul's Title VII claims for sex discrimination.

**B.**

We turn, then, to Paul's challenge to the District Court's grant of summary judgment on her claims of age discrimination under the ADEA.[11] Here, too, we follow the District

---

[10] Paul also asserts that she "worked in an office dominated by men" and that only three of the twelve employees Lopez supervised were women. But, as Paul has otherwise failed to present evidence of a "discriminatory motive lurk[ing] beneath the surface" of the alleged adverse employment actions visited upon her, this imbalance, standing alone, is "inadequate" to show that the grant of summary judgment to the defendant was in error "absent some further indication of [its] relevance." Villanueva v. Wellesley Coll., 930 F.2d 124, 131 (1st Cir. 1991).

[11] The District Court followed the Magistrate Judge in treating Paul's ADEA claims as if they had been brought under 29 U.S.C. §§ 623(a)(1), 631(a), and Paul does not challenge that treatment on appeal, although the defendant's brief initially describes her complaint as alleging claims under 29 U.S.C. § 633a of the ADEA, which applies to claims against federal government employers, including executive agencies as defined in section 105

Court in applying the McDonnell Douglas burden-shifting framework, and here, too, the issue on appeal is whether the record contains evidence from which a jury could infer that the defendant's explanation for Lopez's actions was a mere pretext for discrimination, this time based on her age. We conclude that it does not.[12]

Paul once again highlights the decline in her performance assessments to show pretext. But, for the reasons that we have just explained, the evidence concerning those reviews -- both in terms of the rankings that she received and her written evaluations -- does not suffice to create a genuine issue of disputed fact on that issue.

Paul does note that the record shows that she was the oldest employee that Lopez supervised and that Lopez let a younger

_____

of Title 5. The defendant's brief goes on, however, to describe Paul's claims as if they had been brought under § 623(a)(1). As neither party argues that the issues presented to us turn on which of these provisions of the ADEA grounds Paul's ADEA claims, we do not consider this point further.

[12] While the Supreme Court "has not definitively decided whether the evidentiary framework of [McDonnell Douglas] utilized in Title VII cases is appropriate in the ADEA context," Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 n.2 (2009)), this Circuit "has long applied the McDonnell Douglas framework to ADEA cases," id. (citing Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 n.2 (1st Cir. 2009)); see also Gómez-Pérez v. Potter, 452 F. App'x 3 (1st Cir. 2011) (analyzing a claim of retaliation, brought under § 633a, under the McDonnell Douglas framework).

employee telecommute when Paul could not.  But, given that Paul's performance review ranking made her ineligible for telecommuting and the record includes no evidence that the younger employee was similarly ineligible, this evidence cannot suffice to create a trialworthy issue as to pretext.  See Byrd, 61 F.3d at 1033 (requiring a plaintiff to show at summary judgment that she was "subjected to different treatment than persons similarly situated 'in all relevant aspects'" (emphasis omitted) (quoting Stratus Comput., Inc., 40 F.3d at 17)).[13]

Paul separately argues that the record supportably shows that Lopez remarked to her at one point that "You are 64 no 65" and that this remark provides a basis from which a reasonable juror could find that she was discriminated against based on her age. But, "[i]solated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent," Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 329 (1st Cir. 1996), even if made by a supervisor, see Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996) (finding a supervisor's comment about age to be a stray remark).  And here, beyond asserting that the remark was mentioned during one of Paul and Lopez's "last meetings," Paul

---

[13] Paul does claim that the younger employee was ineligible for telecommuting based on her tenure but does not provide record support for this assertion.  The telecommuting policy in the record does not indicate that the younger employee was ineligible for telecommuting based on tenure.

identifies nothing in the record that indicates what conversation was occurring when the comment was made or whether the comment was tied to any feedback or decision. See Gonzalez v. El Dia, Inc., 304 F.3d 63, 69-70 (1st Cir. 2002) (finding that a comment was a stray remark, in part because the record did not identify the context or time of the remark).

The result is that Paul has failed to meet her burden with respect to pretext on the age discrimination claims as well. Accordingly, we agree with the District Court that summary judgment for the defendant was warranted on Paul's age discrimination claims under the ADEA.

## c.

Paul's claims for retaliation under Title VII and the ADEA also lack merit.[14] She bases these claims on her allegation that Lopez wrote "EEO activity" on the office notice board when she went to the EEO office to be interviewed about her claims. She argues that a jury supportably could find that this conduct constituted retaliation for her protected activity in filing a complaint with the EEOC, at least when that action is considered in light of the years of alleged comments and teasing that she had

---

[14] The Magistrate Judge analyzed Paul's retaliation claims as if they were brought only under Title VII. Because Paul contends that she faced retaliation for reporting sex and age discrimination, we analyze her claims under both Title VII and the ADEA.

endured from GSA co-workers about protected conduct that she had engaged in during the 1990s.[15]

With respect to her retaliation claims under each of these federal statutes, we, like the District Court, once again follow the familiar McDonnell Douglas framework, "albeit with slight modifications" to account for the retaliation claim's distinct focus. Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 30 (1st Cir. 2015) (quoting Mesnick, 950 F.2d at 827). The first stage of the framework requires the plaintiff to "make a prima facie showing that (i) [s]he engaged in []protected conduct, (ii) [s]he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action." Id. (quoting Mesnick, 950 F.2d at 827) (ADEA); see also Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011) (Title VII).

Paul does not challenge the District Court's finding -- via its adoption of the R&R -- that Paul had failed to show a causal connection between her 1998 employment discrimination lawsuit that Paul filed when working for the United States Department of Defense and the allegedly adverse employment actions that she faced when employed at the GSA. Nor does she dispute the

---

[15] On appeal, she also claims that Lopez "snickered" to a union official in the office when discussing that Paul had talked to a union representative about her performance review. The record contains no evidence that Lopez snickered.

District Court's finding -- again, via its adoption of the R&R -- that most of the allegedly adverse employment actions to which Paul had been subjected when working at the GSA were taken before she filed her formal complaint with the EEOC in January of 2009.

The writing of "EEO activity" on the notice board in describing Paul's whereabouts, however, occurred after that complaint had been filed. Thus, the District Court based its determination that this conduct did not provide a basis for Paul's retaliation claims to survive summary judgment on a different determination -- namely, that it did not constitute an adverse action because it was not the kind of conduct that could have chilled any protected conduct. Paul thus rightly focuses her challenge to the District Court's grant of summary judgment to the defendant on her retaliation claims on that aspect of the District Court's ruling.

In certain circumstances, it may constitute an adverse employment action for an employer to make an employee's EEO-related activity known to others in the workplace. The communication of such information -- depending on the context -- might well "chill a reasonable employee from further protected activity." Mogenhan v. Napolitano, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (concluding that record evidence that a supervisor posted an employee's full complaint on a work intranet page "perhaps alone" provided

sufficient evidence for a plaintiff's case to survive summary judgment on her retaliation claim under Rehabilitation Act).

That is so, we may assume, even in a case like this one, in which all that has been communicated to others is that the employee was engaged in "EEO activity" and thus no further details have been conveyed to others that would permit them to conclude that the nature of that activity was such that it constituted "protected conduct." After all, depending on the context, it may be that the mere use of those words could, in and of itself, suffice to make clear to others that the "EEO activity" in which the employee was engaged was the kind of "protected conduct" that the retaliation bar imposed by Title VII and the ADEA prohibits an employer from chilling.

Nevertheless, to survive a motion for summary judgment by the defendant on retaliation claims under either Title VII or the ADEA, a plaintiff must show that there is a genuine issue of disputed fact as to whether the posting of information that could chill the plaintiff's protected conduct was in fact causally connected to that protected conduct. See Soto-Feliciano, 779 F.3d at 30 (requiring, under the ADEA, that the plaintiff show that "a causal connection existed between the protected conduct and the adverse action" (quoting Mesnick, 950 F.2d at 827)); Velazquez-Ortiz, 657 F.3d at 72 (requiring, under Title VII, that the plaintiff show "that the [adverse employment] action was causally

- 22 -

linked to her involvement in the protected activity"). Thus, even assuming the words on the notice board are of a kind that could constitute an adverse employment action, Paul must show that the evidence sufficed to permit a reasonable juror to find that the person who conveyed the information regarding the employee's "EEO activity" to others knew what the employee was doing in relation to the EEO not only in a general sense but in the sense of knowing that the employee's EEO activity involved protected conduct. For, absent evidence that would permit that finding, a juror would have no basis for finding that the communication of the fact that the plaintiff was engaged in "EEO activity" was caused by her engagement in protected conduct, notwithstanding that it might be possible to find that the communication of that fact was chilling in an objective sense. See Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013) (explaining that "the employee must show that the retaliator knew about her protected activity" because "one cannot have been motivated to retaliate by something he was unaware of").

Against that legal backdrop, it would not have been enough even if Paul had shown that the words written on the notice board were of a type that could chill protected conduct. Rather, there must be evidence in the record from which a reasonable juror could find that the causal requirement has been satisfied. But, as we will now explain, we conclude that the record reveals that

- 23 -

there is no such evidence here.  Thus, we affirm the District Court's grant of summary judgment on this basis, even though the District Court did not itself rely on it.  See Santangelo, 785 F.3d at 68.

The words "EEO activity" are amorphous.  The consequence is that their mere appearance on the office notice board fails to reveal that whoever wrote them must have known that Paul, by engaging in unspecified "EEO activity," was engaged in protected conduct.  For that reason, their appearance does not in and of itself permit the inference that whoever wrote them was prompted to do so because of Paul's engagement in such conduct.

To make the required showing with respect to the causal element, therefore, Paul must show who wrote those words.  Paul does not appear to dispute this point.  Instead, she asserts in her brief to us that the record is such that it would permit a reasonable juror to find that Lopez wrote "EEO activity" on the board.

We may assume that, as Paul contends, if a juror supportably could find that Lopez was the one who wrote that she was engaged in "EEO activity," then a juror could supportably find that he was prompted to write those words on the notice board because of her engagement in such protected conduct due to what she contends the record shows about Lopez's knowledge of Paul's EEO-related activity.  But, even with that favorable assumption in

place, Paul still must show that the record permits a reasonable juror to find that Lopez did write those words on the notice board if she is to meet her burden with respect to the causal element for purposes of surviving summary judgment.

Paul points to no evidence in the record, however, that supports that conclusion. For example, Paul does not point to any evidence that reveals that Lopez ever or even regularly -- let alone in this particular instance -- wrote employees' locations on the notice board. In fact, the undisputed record indicates that he did not, as the record describes the normal practice, to the extent that employees followed it, as one in which employees wrote their own time and absences on the board.

Thus, because Paul fails to identify any basis in the record from which a reasonable juror could find that the words describing Paul's location were, in this instance, written by someone other than herself and who knew that she was engaged in protected activity, she fails to identify any basis in the record from which a reasonable juror could find the requisite causal connection under either the ADEA or Title VII between the claimed adverse action by her employer and the protected conduct that she contends was chilled. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (explaining that where "the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," summary

judgment is appropriate).  Accordingly, we reject Paul's challenge to the grant of summary judgment to the defendant on her retaliation claims under those statutes.

## III.

For these reasons, we **affirm** the judgment of the District Court.